## Union National Bank of Chicago

### v.

## John W. Goetz et al.

*Insolvency—Partnership—Banks—Establishment of Credit—Fraudulent Statements—Trust Fund—Confusion—Identification—Practice—Jurisdiction.*

1. Before equity can charge as trustee one who has obtained title to goods from the vendor by fraud, not only must the fraud be shown, but it must also appear that the parties are in such a situation that a rescis-

sion of the fraudulently induced contract can be effected. The effect of a rescission must be to restore the *status quo.*

2.   Where goods can not be reclaimed through the intervention of rights of third parties, or the identity thereof has been lost, the vendor is not confined to the terms of the fraudulent contract for a remedy, but may disregard the same and recover damages for the consequences of the fraud as a substantive cause of action, and where money is obtained by fraud or under a fraudulent contract, it may be recovered at law in an action for money had and received, and the facts which will prevent the deceived party from reclaiming the title to goods at law, will prevent him also in equity, and unless the goods can be identified in the hands of the vendee, or the money can be clearly and distinctly traced, conditions do not exist which permit the resumption of title by the defrauded party, and authorize a court of equity to restore the goods or money as property the title to which never passed, and which the perpetrator of the fraud held as trustee for the defrauded.

3.   In such cases the jurisdiction of courts of law and courts of equity is concurrent, and the principles upon which they proceed is identical.

4.   Upon a bill filed for a specific lien upon the general assets of an insolvent firm for money loaned upon alleged fraudulent representations made by it from time to time as to its business, for the purpose of establishing a credit, the bill declaring that the fund in question can not be identified or traced, this court declines, in view thereof, to interfere with a decree denying the relief prayed.

[Opinion filed March 10, 1890.]

Appeal from the Superior Court of Cook County; the Hon. Egbert Jamieson, Judge, presiding.

A bill was filed by John W. Goetz against his partner, Louis W. Reiss, asking for a dissolution of partnership and a winding up of the firm affairs, the firm being insolvent, the appointment of a receiver, etc. A receiver was appointed, and on the application of the Union National Bank it was made a party to the suit with leave to answer and file a cross-bill. The cross-bill filed alleges in substance as follows :

That on January 22, 1888, the defendants Goetz and Reiss were and for a long time prior had been partners in business in the city of Chicago, under the firm name of John W. Goetz & Co., and that the complainant during the same time was and still is engaged in the business of banking, and is a corporation organized under the laws of the United States,

known as the National Bank Act; that on January 23, 1888, said Goetz & Co., for the purpose of establishing a credit with said bank and of inducing it to loan to said firm money from time to time as desired by them, represented and stated in writing to said bank as follows:

"CHICAGO, ILL., January 23, 1888.

John W. Goetz & Co., of Chicago, County of Cook, State of Illinois, for the purpose of obtaining a credit with the Union National Bank of Chicago, Ill, do make the following statement and representations of our present true financial circumstances, wealth and mercantile respectability, which said representations shall be the basis of our credit with the Union National Bank, both for our present credit and for all credits for and during the period of two years from this date, agreeing to immediately notify them of any material change in or of our business matters during the period above mentioned. In case of failure or insolvency, it is agreed that all notes shall be considered then due. A co-partnership of John W. Goetz and Louis W. Reiss.

ASSETS.

Amount.

Stock of goods on hand at value........ $114,000.

LIABILITIES.

Amount.

For merchandise not to exceed.......... $   8,000.
For borrowed money .................    15,000.

(Signed) JOHN W. GOETZ,

For J. W. G. & Co."

Whereby said bank and its officers were informed by said firm that their capital was $91,000 over and above all liabilities.

That at various times since that date, said John W. Goetz & Co. have for the same purpose made to said bank oral statements of their financial condition, all of which were to the effect that they were doing a large and profitable business, and were rapidly increasing their net capital as shown by said written statement, the last of these statements being made on the first day of April, 1889. That relying upon this

statement of January 23, 1888, and the subsequent confirmatory statements so made, and believing them to be true, said bank gave to said John W. Goetz & Co. a line of credit for money loaned from time to time, and among others loaned to them the following named sums at the dates stated, to wit:

February 14, 1889........................$2,500
February 20, 1889.......................... 5,000
March 8, 1889............................. 5,000
April 1, 1889............................. 2,500

Amounting to the sum of $15,000. Upon the loan first above stated, there has been credited the sum of $524.10, leaving the amount still due from said firm to said bank the sum of $14,475.90. That the statements so made by Goetz & Co. to said bank were false and fraudulent when made, and well known by them to be false and fraudulent. That in fact the defendants at the time of making said written statement, did not have on hand a stock of goods of the value of $114,000, and owed in fact for merchandise many thousands of dollars far in excess of $8,000, and many thousands of dollars for borrowed money in excess of $15,000, and were in fact at all times insolvent, by means of which said false and fraudulent representations said bank was deceived, cheated and defrauded, and so continues to be, and said defendants came into possession of the money so obtained by fraud.

That having acquired said money by such fraud, the defendants became and still are trustees of the cross-complainant in respect to the same, and accountable for said moneys, either *in specie* or in whatsoever else they placed or invested it. That said trust funds were by said defendants invested and paid out from time to time for merchandise which was by them brought into their store on State street, in the city of Chicago, and there so mixed and commingled with other merchandise, bought with other funds, or procured by other means, that the cross-complainant is now unable to identify the same, but avers that said merchandise, so purchased and paid for by said trust funds, or other merchandise bought with the proceeds thereof, to which said trust also attached, were in the store of said defendants when the same was taken

possession of by the receiver, as hereinafter mentioned, and passed into his possession and so remain, unless disposed of by said receiver, in which case the proceeds thereof are in his hands, subject to said trust.

That J. S. Huey was appointed receiver upon April 10, 1889, under the original bill, and now has the custody and control of the property and effects of said firm. That by reason of the facts aforesaid, the cross-complainant is entitled in equity to pursue said trust money into the property now in the hands of said receiver, and is entitled by reason of the confusion of goods, brought about by said defendants, to a lien upon the whole stock of merchandise now in said receiver's possession, for the restoration of the money out of which it has been defrauded.

Prayer for relief, and that the moneys so loaned by the cross-complainant, and unpaid, may be decreed to have been obtained by the defendants by fraud, and that they may be held liable as trustees of the cross-complainant in respect to the same; that said trust money may be decreed to have been invested by the defendants by successive and continuing transactions in the merchandise now in the possession of the receiver, and to have become by the act of the defendants, so confused with the general bulk of such merchandise that the cross-complainant is entitled to a lien upon the whole for its reimbursement; that such lien and reimbursement may be decreed accordingly, and that in the meantime the receiver be directed to retain all the merchandise which came to his possession, and the proceeds of any that has been sold, to abide the final decree. Prayer for general relief.

Other creditors became parties to the suit, and filed general demurrers to the cross-bill of said Union National Bank, and on argument said demurrers were sustained and said cross-bill dismissed for want of equity, and from said order the appeal is prosecuted.

Messrs. TENNEY, HAWLEY & COFFEEN, for appellant.

Messrs. FRANK A. HELMER and KRAUS, MAYER & STEIN, for appellees.

Moran, J.    The facts stated in the cross-bill show that the transactions of the parties created between them the relation of debtor and creditor.   The loan was obtained by making false representations; but the fact that the subject of the transaction was money instead of merchandise, permits no distinction as to the principle that is to govern.   If, for greater clearness of illustration, we suppose that $15,000 worth of goods had been obtained from complainants on credit on the same false representations that induced the loan, and that said goods had been sold and the proceeds of them had gone with other funds into the purchase of the stock in the hands of the receiver, so that neither the goods nor proceeds could be identified or traced, further than that the same went in general augmentation of the assets of appellees, it will be readily seen that the condition of the parties would be such that the creditors could not be permitted to change the relation from debtor and creditor to trustee and *cestui que trust.*   It is not like the case where the first relation existing between the parties with reference to goods or money is a trust relation, created either expressly or by implication.   In such case a court of equity enforces a trust created by the parties, but a trust *ex maleficio* is one raised or constructed by the court upon the acts of the parties where no trust was intended by either party, for the purpose of furnishing to the wronged party a more complete remedy.   Now, before equity can charge as trustee one who has obtained the title to goods from the vendor by fraud, not only the fraud must be shown, but it must also appear that the parties are in such a situation that a rescission of the fraudulently induced contract can be effected. A sale of goods or a loan of money, though induced by fraud, vests title to the goods or the money in the vendee or the borrower.   The transaction is not void, either at law or in equity, but only voidable, and it is to be taken as valid until rescinded.   The effect of a rescission must be to restore the *status quo.*   If the party who obtains the goods has disposed of them, and has obtained money or other goods in their place, there can be no rescission at law or, rather, a rescission at law can not operate to restore the title in the goods to the

vendor; but there may be a rescission of the contract so as to allow the vendor to maintain an action for damages for the deceit or fraud practiced upon him. Though he can not reclaim the goods, because the rights of third persons have intervened, or the identity of the goods is lost, he is not confined to the terms of the fraudulent contract for remedy, but may disregard those terms and recover damages for the consequences of the fraud as a substantive cause of action.

So money obtained by fraud or under a fraudulent contract, may be recovered at law, in an action for money had and received. Now by analogy, the same facts which will prevent the deceived party from reclaiming the title to the goods, at law, will prevent him also in equity. Rescission may be his right because the contract was induced by fraud, but unless the goods obtained by the fraud can be identified in the hands of the vendee, or if money was obtained, and that can not be clearly and distinctly traced, and its substantial identity with the money obtained shown, the conditions do not exist which permit the resumption of title by the defrauded party, and authorize a court of equity to decree the restoration of the goods, or money, as property, the title to which never passed, and which the perpetrator of the fraud held as trustee for the defrauded.

In such cases the jurisdiction of courts of law and courts of equity is concurrent, and the principles on which they proceed are identical. A judgment may be obtained at law, and a decree in equity, but they will be for the same thing in substance. In the English courts a decree will go in such case though there is a clear remedy at law. Ramshire v. Bolton, L. R. 8, Eq. 294; Hill v. Lane, L. R. 11, Eq. 215.

It is thus seen that though fraud in the vendor or borrower may give rise to the equitable *right* of rescission in the vendor or lender, whether equity in applying a *remedy* will impress a trust on the property, and decree its return, depends on the identification of the property in the hands of the vendee, without the attaching of the *bona fide* rights of third persons, or on tracing the fund with certainty and clearness in such manner as that its identity as a separate fund is maintained.

Where the property is in the hands of the vendee, the remedy is complete and adequate at law, and hence there is, ordinarily, no occasion to invoke the aid of chancery ; and though, undoubtedly, money has often been obtained by means of false representations as to credit or by other false pretenses, a court of equity is now asked for the first time, as far as we are advised, to construct a trust upon the fraud, and declare a specific lien on all the property of the debtor, upon the allegation that the money by fraud obtained went to the increase of his general assets. The principles on which the court proceeds, does not authorize the maintenance of the bill. Though general statements found in text books are broad enough to give apparent support to appellant's contention, when the authorities cited in support of such propositions are examined, none are found which go the length necessary to sustain the application of the doctrine invoked to the facts of this case. It would be unprofitable to enter upon a discussion of the different authorities that illustrate the extent to which the court will go in aid of a *cestui que trust.*

Where there is a strict trust, *i. e.,* where the relation is created by the act and intent of the parties, or where a fiduciary relation exists between them, some courts have gone the length in the execution of the trust, of giving a general lien on the entire fund of a trustee who had wrongfully mixed the trust fund with his individual property in order to destroy its identity. In such cases the court aids the enforcement of a trust created by the parties and prevents the fraud from defeating the trust, and the remedy of rescission is not necessary to the court's action, there being nothing to rescind. But even in such cases our Supreme Court has refused the relief where the fund could not be followed as a separate and independent fund distinguishable from any other. The School Trustees v. Kirwin, 25 Ill. 73, Wilson v. Kirby, 88 Ill. 566, and the many cases cited in appellee's brief decided by courts of last resort in other States, show that the view of our own court is sustained by the weight of authority.

This bill does not seek a decree for the amount of money due to the complainant. The relief sought is a specific lien for

the amount due upon the general assets. The bill declares that the fund can not be identified or traced. By that allegation the cross-complainant showed that it was not entitled to the relief. The bill makes a case which would probably entitle the complainant to a judgment at law for the money borrowed, on the strength of the false statements alleged to have been made, as for money had and received, or in an action for deceit, but makes no case for the relief asked in a court of equity.

*Decree affirmed.*