(No. 21512.—

THE PEOPLE *ex rel.* Oscar Nelson *vs.* THE PEOPLES STATE BANK OF MAYWOOD *et al.*—(THE VILLAGE OF MAYWOOD, Appellee, *vs.* ANTHONY J. BUSSCHER, Receiver, Appellant.)

*Opinion filed December 22, 1933.*

520

HERRICK, FARTHING and SHAW, JJ., dissenting.

ROY MASSENA, (DONALD N. SCHAFFER, of counsel,) for appellant.

JACOB E. DITTUS, (EDMUND D. ADCOCK, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Auditor of Public Accounts, after an examination of the affairs of the Peoples State Bank of Maywood, on February 8, 1930, took possession of the bank's assets and business, and appointed Anthony J. Busscher receiver. Shortly thereafter, the People of the State, on the relation of the Auditor, filed a bill in the circuit court of Cook county against the bank, its officers, directors, stockholders and certain other persons for the dissolution of the bank and the liquidation of its business. The village of Maywood made claim, as a depositor, to the general village account, $52,026.93; the Folan, collector, account, $11,402.82, and the water department account, $256.82, aggregating $63,686.57. On November 19, 1930, the village, pursuant to leave granted, filed a petition by which it sought to have allowed as a preferred claim, the excess of the first account above $30,000, for which sum the village held surety bonds, and the whole of the second and third accounts. The receiver answered the petition denying the right of the village to a preference over the other depositors. The facts were stipulated and the court heard the cause upon the petition, the answer and the stipulation. The court, by its decree found that no preference could be claimed for the excess of $22,026.93 in the general account

above the $30,000 protected by the surety bonds, but that the moneys credited to the Folan, collector, and the water department accounts constituted trust funds for which the village was entitled to a preference. Accordingly, the court adjudged the allowance, in favor of the village, of $52,026.93, the sum credited to the general account, as an ordinary claim, and of $11,659.64, the sum of the credits in the two remaining accounts, as a preferred claim having priority over the claims of general creditors. The village, complaining of the denial of a preference respecting the excess in the general account, prosecuted an appeal to the Appellate Court for the First District. The receiver assigned cross-errors upon the allowance, as a preferred claim, of the sum of the credits in the second and third accounts. The Appellate Court reversed the decree to the extent that the village was denied a preference for the excess of $22,026.93; affirmed it in all other respects, and remanded the cause to the circuit court with directions to allow the village a preference for the excess in the first, as well as for the whole of the second and third accounts. Upon the petition of the receiver, the Appellate Court granted a certificate of importance and allowed an appeal to this court.

The Peoples State Bank of Maywood was organized on April 24, 1925, under the banking laws of this State. It had a capital of $100,000 and it conducted a general banking business in the village of Maywood, in Cook county, from the time of its organization until the Auditor of Public Accounts took charge and appointed a receiver on February 8, 1930. To qualify as a depositary of the money received by the village treasurer from time to time, the bank, in accordance with the provisions of a local ordinance, on May 16, 1927, executed a bond of indemnity to the village, in the penal sum of $25,000, with the Ætna Casualty and Surety Company, as surety. The bond, originally executed to remain in force for the term of one year,

was renewed in 1928 and again in 1929. On July 1, 1929, the bank and the same surety company gave the village an additional bond for $5000. Both bonds were in effect when the receiver was appointed. The village treasurer made deposits to the credit of the general village account; and, with the exception of September 17, 1929, a credit balance was maintained in that account each business day after May 16, 1927, which exceeded the penalty of the original depositary bond and after July 1, 1929, exceeded the sum of the penalties of both bonds. Statements were issued by the bank showing the balance to the credit of the village at the end of each month and these reports were available to the village trustees. No demand was ever made upon the bank by the president, the trustees, or any other officer of the village for additional indemnity until February 1, 1930, when the treasurer wrote a letter to the bank requesting an increase in the penalty of the depositary bond to $60,000. The bank did not comply with the request.

Grace E. Schroeder was the treasurer and James F. Folan, the comptroller and *ex-officio* collector of the village. The former was appointed in January, 1917, and the latter in May, 1929, and both held office at the time the bank was closed. The treasurer made deposits in the general village account and funds were subject to withdrawal therefrom at any time and from time to time upon proper checks, vouchers or warrants. Bills for special assessments levied and for water supplied within the village were made payable at any local bank. The Folan, collector, account represented payments at the Peoples State Bank in discharge of special assessments or installments of such assessments by owners or persons interested in real estate. To the water department account, water rates or charges, when paid at the bank by consumers of water, were credited. Neither the Folan, collector, nor the water department account was subject to check, but from time

to time funds were transferred from these accounts to the general village account.

The liabilities of the bank, when it ceased to do business, amounted to $527,187.51, and of this total it owed $410,232.48 to depositors. The credit balance in the general village account, including $30,000 secured by the two indemnity bonds, was: On January 15, 1930, $44,939.99, on January 18, 1930, $44,597.81; on February 1, 1930, $49,215.75, and on February 8, 1930, $52,026.93. The sum of the money in the bank was: On January 15, 1930, $10,424.35, on January 18, 1930, $14,844.92; on February 1, 1930, $11,990.97, and on February 8, 1930, $13,-596.07. The credit with the bank's sole correspondent was: On January 15, 1930, $41,813.98, on January 18, 1930, $3256.71; on February 1, 1930, $15,631.34, and on February 8, 1930, $18,813.18.

Exclusive of deposits by the village, sums of money exceeding in the aggregate $6639.94 were deposited in the bank between January 15, and February 8, 1930. Preferences in payment are sought for these deposits, among others, in addition to the preference claimed by the village for the excess of $22,026.93 above $30,000 in the general village account, and the balances of $11,402.82 and $256.82 in the Folan, collector, and the water department accounts respectively. The money deposited in the three accounts of the village, as well as in those upon which the other claimants seek to obtain preferences, was, when deposited, mingled with the money in the bank's custody.

The deposits in the general village account to the extent of $30,000, protected by the surety bonds, are not in issue. Whether the excess of $22,026.93 in that account and the credit balances in the Folan, collector, and the water department accounts, amounting to $11,659.64, constitute trust funds or special deposits for which the village is entitled to a preference over general creditors, is the question presented for decision. The contention of

the appellant is that, regardless of any maximum limitation prescribed by ordinance, the excess of $22,026.93 was legally deposited in the bank by the village treasurer; that the Folan, collector, and the water department accounts were general deposits and that neither the whole nor any part of these accounts may take precedence in the order of payment over the claims of general depositors. The theory upon which the appellee claims a preference is that, owing to the prohibition of an ordinance against deposits by the village treasurer in excess of the indemnity which the depositary bonds afforded, and the bank's knowledge of that provision, the excess deposits were illegally made, and with respect to them, the bank, in consequence, became a trustee *ex maleficio,* and that the Folan, collector, and the water department accounts were special, and not general deposits, and therefore took priority in payment over the latter.

The Folan, collector, and the water department accounts will receive, for convenience, initial consideration. As a rule, when money is deposited in a bank, the title to the money passes from the depositor to the bank, and the latter becomes the depositor's debtor for the amount of the deposit. Under such a relationship, the deposit constitutes a part of the bank's assets, and in case of the insolvency of the bank, the depositor has no right to a preference, but shares *pro rata* with the bank's general creditors. Exceptions to this rule are: first, where money or other thing is deposited with the understanding that the particular money or thing is to be returned to the depositor; second, where the money or thing deposited is to be used or applied for a specifically designated purpose, and third, where the deposit is wrongful or unlawful. To make a deposit a special one, the bank must be made an agent or trustee rather than a debtor, and its agency or trusteeship cannot be created out of the mere external relationship of debtor and creditor unless the deposit is wrongful or the law for-

bids the bank becoming a debtor. (*People* v. *Farmers State Bank*, 338 Ill. 134.) In this case, deposits made from day to day by owners of real property in payment of special assessments and by consumers of water in discharge of water rates were credited to the Folan, collector, and the water department accounts respectively. These deposits were entered on the books of the bank and were mingled with its funds the same as other general or commercial deposits. There was no agreement or understanding that the bank should keep the deposits credited to these two accounts intact and return them or apply them to one or more purposes specifically designated. The proper village officers directed that these deposits be made and there is no pretense that they were wrongful or unlawful. The specific money received by the bank was never delivered to the village and such delivery was never contemplated for, at convenient intervals and upon the requisite authority, withdrawals were made from these accounts and corresponding credits were given to the general village account. It follows that neither the Folan, collector, nor the water department account gave rise to a trust relationship between the bank and the village. The deposits credited to these accounts constituted general and not special deposits and the appellee is not entitled to priority over the general creditors for the payment of the credit balances in these accounts when the bank closed. *Wetherell* v. *O'Brien*, 140 Ill. 146; 1 Morse on Banks and Banking, (6th ed.) sec. 185.

The contention respecting the excess of $22,026.93 on deposit in the general village account at the time the bank ceased to do business requires a consideration of certain provisions of the Cities and Villages act, and of an ordinance of the village passed pursuant to these provisions. Section 5 of article 7 of the Cities and Villages act (Cahill's Stat. 1931, p. 347; Smith's Stat. 1931, p. 363) requires the treasurer to receive all moneys belonging to the

corporation and to keep his books and accounts in such manner as may be prescribed by ordinance. These books and accounts, the same section provides, shall always be subject to the inspection of any member of the city council or board of trustees. The right to the sole and uncontrolled custody of the money belonging to the village given by section 5 to the village treasurer is, however, qualified by section 9 of the same article. That section provides: "The treasurer may be required to keep all moneys in his hands, belonging to the corporation, in such place or places of deposit as may be designated by ordinance: Provided, however, no such ordinance shall be passed by which the custody of such money shall be taken from the treasurer and deposited elsewhere than in some regularly organized bank, nor without a bond to be taken from such bank, in such penal sum and with such security as the city council or board of trustees shall direct and approve, sufficient to save the corporation from any loss; but such penal sum shall not be less than the estimated receipts for the current year from taxes and special assessments levied, or to be levied, by the corporation. * * *."

The president and board of trustees of the village of Maywood exercised, by the passage of an ordinance, the power thus conferred. By section 13 of the ordinance, four banks, including the Peoples State Bank of Maywood, all doing business in that village, are designated as depositaries "of the money and funds belonging to said village, which may from time to time be in the hands of the village treasurer," and the treasurer is "directed and required to deposit all such moneys and funds * * * in said banks, and to maintain" such deposits "with said banks substantially equal or as nearly equal as practicable." Each bank, before receiving deposits of village funds, is required by section 14, to execute a bond with sureties approved by the board of trustees and conditioned to save the village from loss. The bond must be filed with the village clerk.

Section 14b provides that the penal sums of the bonds filed by the banks qualifying to receive deposits shall be equal and the aggregate penal sums of all the bonds filed shall be not less than the estimated receipts for the current year from taxes and special assessments levied or to be levied and from revenues derived by the village from all sources. Section 14d forbids the deposit of money by the village treasurer in any designated depositary until it shall have qualified for that purpose by the filing and approval of the bond required. The village treasurer is prohibited by section 14e from depositing funds in any depositary at any time in excess of the penal sum of its bond. Section 15 provides that the president and board of trustees may increase the penal sum of any depositary's bond and to that end require the execution and filing of a new bond.

By section 5 of article 7 of the Cities and Villages act, the treasurer of a village is made the custodian of its funds. In the absence of other requirements prescribed by statute or imposed pursuant to statutory authority, the treasurer of a public body or corporation is an insurer of the funds that belong to it and come to his hands. (Mechem on Public Offices and Officers, sec. 302; *Estate of Ramsay* v. *People,* 197 Ill. 572, 587; *Swift* v. *Trustees of Schools,* 189 id. 584; *Thompson* v. *Board of Trustees,* 30 id. 99; *United States* v. *Prescott,* 44 U. S. 577; *State* v. *Moore,* 74 Mo. 413). The board of trustees of the village, by the ordinance set forth, required the village treasurer to deposit the money of the corporation in designated and qualified depositaries. Such deposits could only be lawfully made and the treasurer's exemption from responsibility for the safekeeping of the village's funds could only be obtained by a strict compliance with the provisions of the ordinance. Two limitations were expressly enjoined upon the treasurer: one, that no deposit of the village's funds should be made in any bank that had not been designated as a

depositary and had not qualified as such by the execution, filing and approval of the requisite bond, and the other, that no such deposit should be made in any qualified depositary, at any time, in excess of the penal sum of the bond of indemnity it had given. The purpose of these two limitations was to provide for the security of the public funds. They governed the official acts of a public officer and a disregard of them might result in the loss or dissipation of funds which the citizens and tax-payers had contributed and in the conservation of which they were vitally interested. These limitations were expressed in imperative language adapted to the end for which they were designed. To construe them as directory, and not mandatory, would seriously impair, if not largely destroy, the ordinance. When the purpose and manner of statement of these limitations are considered, it is obvious that they are mandatory in character.

The appellant, however, argues that the limitation placed upon deposits in designated banks by section 14e of the ordinance is repugnant to the enabling statute and is therefore void. This contention has no merit. Section 5 of article 7 of the Cities and Villages act provides that the treasurer may be required to keep all the corporation's money in his hands "in such place or places of deposit as may be designated by ordinance." A place of deposit must be some regularly organized bank and before it may qualify as a depositary, it must give a bond "in such penal sum and with such security" as the municipal authorities shall direct and approve, sufficient, however, "to save the corporation from loss." The power to require the treasurer to deposit all the funds of the city or village in depositaries which qualify only by giving bonds of indemnity to protect the public corporation against loss, when exercised, leaves no discretion to the treasurer. All, and not a part of his deposits, must be secured by the requisite bonds of indemnity. Without the limitation prescribed by section 14e of the

ordinance, the security contemplated by the enabling act would not be provided. The power conferred necessarily includes the power to impose this limitation.

The omission to observe a mandatory provision of a statute or ordinance renders unlawful the act or proceeding which it governs or to which it relates. (*People* v. *Graham*, 267 Ill. 426). A deposit is wrongful and unlawful when made by the custodian of public funds in a bank which, owing to its failure to furnish the bond of indemnity required by an ordinance passed pursuant to statutory authority, is not qualified to receive the deposit. Likewise, a deposit of public funds in excess of the penalty of the bond of indemnity given by a qualified depositary, when prohibited by statute or authorized ordinance is, as to such excess, wrongful and unlawful. The receipt of such funds, in either of these situations, the officers of the bank having knowledge of the illegality of the deposit, does not give rise to the relation of debtor and creditor. Such funds, deposited in violation of law, do not become assets of the bank, but are impressed with a constructive trust. (5 Michie on Banks and Banking, (1932 ed.) sec. 61, pp. 140, 141; 1 Morse on Banks and Banking, (6th ed.) sec. 289, subsec. (*a*), p. 668; *Jarvis* v. *Hammons*, 32 Ariz. 444; *Leach* v. *Farmers Savings Bank*, 204 Iowa, 1083; *Board of Fire and Water Comrs. of Marquette* v. *Wilkinson*, 119 Mich. 655; *Yellowstone County* v. *First Trust and Savings Bank*, 46 Mont. 439; *State* v. *Bank of Commerce*, 54 Neb. 725; *State* v. *Midland State Bank*, 52 id. 1; *State* v. *Foster*, 5 Wyo. 199; *Board of Comrs. of Crawford County* v. *Strawn*, 157 Fed. 49; *Multnomah County* v. *Oregon Nat. Bank*, 61 id. 912; *Spokane County* v. *Clark*, 61 id. 538). The Peoples State Bank of Maywood not only had given two bonds of indemnity as a depositary of the funds of the village of Maywood and for that reason was acquainted with the provisions of the ordinance, but it also was charged with knowledge of those provisions and the

limitations they imposed. It was therefore unlawful for the village treasurer to deposit and the bank to accept funds belonging to the village in excess of $30,000, the sum of the penalties of the two bonds; and the unauthorized excess deposits credited to the general village account, amounting to $22,026.93 when the bank closed, were held by the bank as trustee *ex maleficio* for the use and benefit of the village.

The contention is urged by the appellant that, even if the validity of the limitation imposed by section 14*e* of the ordinance be assumed, yet the village treasurer, as an insurer of the funds received in his official capacity, had the right, at his election, to retain in his custody the portion of those funds which exceeded that limitation or, as an alternative, to deposit the excess in any bank of his selection, including a qualified depositary whose indebtedness to the village, on account of deposits made, equaled the penalty of its bond of indemnity. The office of village treasurer is of statutory and not of constitutional origin; and the funds of the village in the hands of the treasurer are trust funds subject to control and disposition by the board of trustees in the manner and for the purposes prescribed by law. The treasurer deposited the excess of $22,026.93 in the Peoples State Bank of Maywood without authority and in violation of the express limitation imposed by the ordinance. The bank accepted the excess funds knowing that they were wrongfully and unlawfully deposited. Manifestly, the treasurer's liability as an insurer of the corporation's funds in his custody could not exempt him from obedience to the provisions of the ordinance and infuse legality into transactions which the board of trustees, in the exercise of its ample power, had expressly forbidden.

The appellant further contends that acquiescence on the part of the village trustees for nearly three years in excess deposits by the treasurer estops the village from asserting

that these deposits were wrongfully and unlawfully made. The ordinance prohibiting deposits in excess of the penal sum of the indemnity bond was a part of the law of the village and could not be disregarded with impunity. Officers of a municipal corporation cannot, by the failure to perform their duties, surrender the rights of the municipality or estop it from asserting them. Official acquiescence in the violation of a positive provision of a statute or ordinance cannot create an estoppel preventing the enforcement of such a provision.

The insufficiency of the assets to satisfy all the demands made upon the insolvent gives rise to claims for preferences and the necessity for their adjudication. The real controversy in a case of this character is therefore between the claimants who seek priority in the order of payment on the one hand and the great body of creditors, usually represented by the receiver, on the other. All debts, in the absence of priorities prescribed by statute, are of the same rank or level, and a person who seeks a preference over his fellow-claimants in the distribution of an insolvent's assets must show that he occupies some relation to the insolvent's estate which differs from and raises him above the plane of a mere creditor. The law recognizes a claim for a preference actually based on a right of property in specific assets in the possession of an insolvent bank at the time it ceased to do business. In case of the misappropriation of such assets, a court of equity, when its jurisdiction is invoked by an appropriate action, will declare the wrongdoer a constructive trustee of the proceeds of his wrongful act. The constructive trust will attach to successive substitutions so long as they can be identified as the product, either as a whole or in part of the original assets, and the superior rights of a *bona fide* purchaser have not intervened. A trust, however, necessarily involves a relationship between two persons with respect to certain property, and unless the claimant shows, in the case, for

example, of an insolvent bank, that the receiver has possession of the whole or a part of the property or its proceeds, the claimant does not place himself in a relation to the insolvent's estate which differs from that of an ordinary creditor and, as a consequence, no trust can be declared or enforced. "Tracing Technique in Bank Preference Cases," Prof. Wayne L. Townsend, 7 University of Cincinnati Law Review, p. 201.

The true owner of a fund wrongfully withheld by another has a right to have it restored, not as a debt due and owing, but because it is the property of the former. A change or alteration in the nature or character of the fund does not affect the relation existing between the parties. Since the right to reclaim a trust fund is founded on the right of property, and not on the ground of compensation for its loss, the beneficiary must be able to point out the particular property into which the fund has been converted. When he is unable to do so, the trust fails and his claim becomes one for compensation only and stands on the same basis as the claims of general creditors. It is as necessary to trace the proceeds of a check or draft constituting part of a trust fund, as it is to trace the proceeds of any other species of personal property; and a trust fund traced into a bank account, if its identity can be established, and no superior rights of innocent parties have intervened, will be held for the benefit of the *cestui que trust.* The question in every case where it is sought to trace trust property is whether it can be identified in its original or altered form.

The classic statement of the foregoing rule by the Supreme Court of Pennsylvania in *Thompson's Appeal,* 22 Pa. St. 16, was adopted by this court in *Union Nat. Bank of Chicago* v. *Goetz,* 138 Ill. 127, at page 135: "Whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced it will be held, in its new form, liable to the rights of the *cestui que trust.* No change of its state and form can di-

vest it of such trust. So long as it can be identified, either as the original property of the *cestui que trust* or as the product of it, equity will follow it, and the right of reclamation attaches to it until detached by the superior equity of a *bona fide* purchaser for a valuable consideration without notice. The substitute for the original thing follows the nature of the thing itself, so long as it can be ascertained to be such; but the right of pursuing it fails when the means of ascertainment fail." It follows that a receiver of a bank in which a fund impressed with a trust was deposited cannot be required to re-pay it in preference to the claims of general creditors, unless the trust fund can be identified, or traced into some other specific fund or property. *School Trustees* v. *Kirwin*, 25 Ill. 73; *Union Nat. Bank of Chicago* v. *Goetz*, 138 id. 127; *Wetherell* v. *O'Brien*, 140 id. 146; *Woodhouse* v. *Crandall*, 197 id. 104; *Moore* v. *Taylor*, 251 id. 468; *Armstrong* v. *Commercial Nat. Bank*, 148 U. S. 50; *Peters* v. *Bain*, 133 id. 670; *Central Nat. Bank* v. *Connecticut Mutual Life Ins. Co.* 104 id. 54; *Jones* v. *Chesebrough*, 105 Iowa, 303; *Clark* v. *Toronto Bank*, 72 Kan. 1; *Italian Fruit Importing Co.* v. *Penniman*, 100 Md. 698; *Englar* v. *Offutt*, 70 id. 78; *Little* v. *Chadwick*, 151 Mass. 109; *Board of Fire and Water Comrs. of City of Marquette* v. *Wilkinson*, 119 Mich. 655; *Neely* v. *Rood*, 54 id. 134; *State* v. *Bank of Commerce*, 54 Neb. 725; *Atkinson* v. *Rochester Printing Co.* 114 N. Y. 168; *Matter of Cavin* v. *Gleason*, 105 id. 257; *Northern Dakota Elevator Co.* v. *Clark & Smart*, 3 N. D. 26; *Cherry* v. *Territory of Oklahoma*, 17 Okla. 221; *Shute* v. *Hinman*, 34 Ore. 578; *Carmany's Appeal*, 166 Pa. 622; *Klepper* v. *Cox*, 97 Tenn. 534; *Philadelphia Nat. Bank* v. *Dowd*, 38 Fed. 172; *Board of Comrs. of Crawford County* v. *Strawn*, 157 id. 49.

Formerly the blending of trust money with the money of the trustee was permitted to defeat the beneficiary's interest and to compel him to stand as a mere unsecured

creditor. This rule had its basis in the fact that money was not earmarked and for that reason could not be recovered in specie. Later authorities have declared that, in the case of blended moneys in a bank account reduced by withdrawals from time to time, it will be presumed that the sums withdrawn were from moneys which the trustee had the right to expend in his own business and that the balance remaining includes the trust fund he has no right to use. (*Knatchbull* v. *Hallett*, 13 L. R. Ch. Div. 696; *Central Nat. Bank* v. *Connecticut Mutual Life Ins. Co.* 104 U. S. 54; *Smith* v. *Mottley*, 150 Fed. 266; *Board of Comrs. of Crawford County* v. *Strawn*, 157 id. 49). This presumption, it is obvious, may be rebutted by evidence. It follows from the rule thus declared that, if at any time during the currency of the mingled account, the withdrawals leave a balance less than the trust money, that fund must be regarded as dissipated except as to this balance, and deposits subsequently added to the account from other sources may not be attributed to the trust fund. (*Board of Comrs. of Crawford County* v. *Strawn*, 157 Fed. 49). The enforcement of this aspect of the rule prevents unwarranted preferences in the distribution of the assets of insolvent banks and its justice is apparent. General creditors can have no complaint if that is returned to which neither the bank nor the receiver ever had title.

The fact that the bank was a trustee *ex maleficio* of the excess deposits for the use and benefit of the village does not subject all the assets of the bank to a prior or preferential charge in favor of the village for $22,026.93, the sum of the excess deposits when the bank was closed. No part of the trust fund arising out of these deposits was traced to a credit by the sole correspondent bank, nor to an investment in securities or other property transferred or delivered to the receiver. The money in the bank was reduced to $10,424.35 on January 15, 1930, when the lowest point was reached. The excess deposits on the same

day amounted to $14,939.99. If the trust fund consisted solely of money, it is apparent that $4515.64 of that fund had been dissipated on January 15, 1930. When the bank ceased to do business on February 8, 1930, the money on hand had been increased to $13,596.07, and the excess deposits to $22,026.93. The deficit in money to equal the trust fund on that day was therefore $8430.86. During this period of twenty-four days, however, depositors other than the village added in excess of $6639.94 to the money in the bank, and for all these deposits preferences in payment over general creditors are claimed. The question whether these claimants shall enjoy preferential participation in any particular assets in the receiver's possession remains to be determined. In any event, until the appellee traces or identifies specific assets as the product, in whole or in part, of the excess deposits or their proceeds, no decree subjecting assets in the hands of the receiver to the trust which arose out of the excess deposits may be entered.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court with directions to deny the appellee a preference for the credits of $11,402.82 and $256.82 in the Folan, collector, and the water department accounts respectively, and further to subject such assets in the receiver's hands, if any, as the appellee may prove were produced by the excess deposits in the general village account when the bank was closed, or by the proceeds of such deposits, to a preferred lien or charge in favor of the appellee for $22,026.93, the amount of such deposits.

*Reversed and remanded, with directions.*

Mr. JUSTICE SHAW, dissenting:

I am unable to agree with a conclusion which results in the total of two wrongs producing one right. I am unable to agree that by a joint and willful violation of law a preference can be created in favor of one of the wrong-

doers and against innocent persons who are interested in the subject matter. In my opinion equity should not aid one or two parties who are *in pari delicto* at the expense of innocent persons. Neither do I think it safe to adopt a rule which constitutes an open invitation to bankers and municipal treasurers to violate a law intentionally and deliberately in order to create a greater security through the fiction of a trust *ex maleficio*. The innocent depositors who place their faith in a bank without violating any law should certainly receive as much consideration in court as another depositor who has violated a law in making the deposit.

The entire theory of a trust *ex maleficio* is a fiction of law devised for the purpose of doing justice and for the protection of an innocent party as against a guilty one. In this case we can exclude all questions of sovereignty, which do not apply to a village, and, doing so, we have here a trust *ex maleficio* raised as a fiction for the protection of one of the guilty parties as against numerous innocent ones—*i. e.*, the *bona fide* depositors of the bank. A fiction is also utilized in all of those cases which hold that under circumstances such as these the title to the money does not pass to the bank. It is perfectly clear that if the village treasurer had deposited ten one-hundred-dollar bills and an hour later the cashier had paid one of those bills out to a customer of the bank, it would be impossible for the village to take that particular one-hundred-dollar bill away from that particular customer by an action of replevin even if it could be specifically identified. The money once deposited and mingled with the funds of the bank most clearly gives the bank a title to it, and nothing short of a fiction can sustain any other view. It is necessary for us to indulge in fictions for the protection of the innocent against the guilty, but it is my opinion that they should not be indulged in for the protection of the guilty against the innocent.

This is a proceeding in equity. It has long been the law that he who asks for equitable relief must come into court with clean hands. In the case at bar the claimant founds its case upon a violation of law actively participated in by its own officer. Without this violation of law in this case there could be no trust *ex maleficio*. The complainant does not come into court with clean hands and is not entitled to a preferred claim to the financial detriment of the ordinary depositors of the bank.

Mr. Justice Herrick and Mr. Justice Farthing concur in this dissenting opinion.