The People of the State of Illinois ex rel. Peter J. Barrett, Appellant, v. Commercial State Bank of Savanna, Defendant. R. G. Fuller, Appellant.

### Gen. No. 9,042.

Opinion filed March 24, 1936.

J. L. BREARTON, of Savanna, for appellant.

DIXON, DEVINE, BRACKEN & DIXON, of Dixon, for appellee; ROBERT L. BRACKEN and J. C. RYAN, of Dixon, of counsel.

Mr. Justice Dove delivered the opinion of the court.

In the proceedings to liquidate the Commercial State Bank of Savanna, pending in the circuit court of Carroll county, R. G. Fuller, administrator with the will annexed of the estate of Lillian Hammerschmidt, deceased, filed, by leave of court, an intervening petition in which he claimed that a certain fund of $2,766.14 was held by the receiver as a trust fund and sought an order directing the receiver to pay the intervenor said amount. The matter was referred to a special master, who took the evidence and filed a report recommending that the claim of the intervenor for a preference should be denied but that his claim should be allowed as a common claim. Upon a hearing before the chancellor, the exceptions which were filed to the special master's report were overruled and an order entered denying the intervenor a preference but allowing his claim in the sum of $2,797.25 as a common claim. From this order, the intervening petitioner has perfected this appeal.

The evidence discloses that Lillian Hammerschmidt had lived in Savanna more than 20 years prior to her death, which occurred on November 15, 1925; that at the time of her death she was 72 years of age and by the provisions of her will, she nominated C. M. Higgins as executor thereof. C. M. Higgins was, at that time, and for a number of years prior thereto, cashier of the Commercial State Bank of Savanna. He was also a director of the bank and so continued until the bank suspended business. Higgins did not qualify as executor and the intervening petitioner, R. G. Fuller, who is a son-in-law of Mrs. Hammerschmidt, was appointed administrator of her estate with the will annexed on February 27, 1926. The evidence further discloses that Mrs. Hammerschmidt had, at the time of her death, two accounts in said bank, one a checking account in the sum of $79.59, the other a savings account. The checking account was carried on the

books of the bank in the name of Mrs. E. Hammer-schmidt and the savings account in the name of Mrs. E. Hammersmith. The savings account as disclosed by the bank's records originated on February 15, 1916. And on the first of January and the first day of July each year, the account was regularly credited with four per cent interest. It was an inactive account, as there were comparatively few deposits and only 14 withdrawals from February, 1916 to October 25, 1924; which was the date of the last withdrawal. Prior to January 1, 1925, the savings account amounted to $2,000 and on that day $40 was credited to the account for interest. On July 1, 1925, $40.80 interest was credited to the account and on January 1, 1926, $41.60 was added to the principal sum as interest, and there-after on July 1st and January 1st of each year up to January 1st, 1933, the bank continued to add interest to the account, so that when the bank suspended business, the total amount in this account aggregated $2,766.14. Prior to Mrs. Hammerschmidt's death and on November 2, 1925, Fuller inquired of the bank as to Mrs. Hammerschmidt's balance and was told that it was $79.59. He further testified that he again inquired on December 5, 1925, which was before he was appointed administrator with the will annexed and was told the same thing, and that he again inquired about the time he filed his inventory, which was March 9, 1927, and was again advised that testatrix's balance was $79.59. It further appears that during the year following Mrs. Hammerschmidt's death, he collected, as such administrator, $8,396.44 and deposited that sum to his credit as administrator in said bank; that on April 19, 1927, he drew checks aggregating $8,200 on said account, paying each beneficiary under the will the sum of $1,600 and paying himself $200. In April, 1928, appellant's account as administrator was overdrawn and he was so notified by the bank, and on April 21, 1928, the bank, at appellant's request, trans-

ferred to his administrator account the sum of $79.59, the amount which was in Mrs. Hammerschmidt's checking account. On December 31, 1932, the Commercial State Bank closed and notified all depositors that it would remain closed unless each depositor waived to the bank 25 per cent of each deposit. Bruce Macken was at that time president of the bank, and he requested appellant as administrator of the estate of Lillian Hammerschmidt to execute such a waiver and Fuller did so on January 5, 1933, signing the same "Mrs. E. Hammersmith Est. R. G. Fuller, Adm." On December 31, 1932, Fuller had to his credit as administrator the sum of $199.24, and when Fuller signed the waiver agreement as administrator on January 5, 1933, the bank issued to him as administrator a deferred certificate of deposit for $49.81. This certificate recited that Fuller as administrator had transferred and assigned to the bank 25 per cent of the amount of money which he had on deposit in said bank at the close of business on December 31, 1932, and the waiver agreement which he executed specifically stated that it applied to checking account, savings account, cashier check and time and demand certificates. On January 5, 1933, the bank issued another certificate for $691.54, which recited that Mrs. E. Hammersmith Estate transferred and assigned 25 per cent of the amount of money which the above named certificate holder had on deposit in said bank at the close of business on December 31, 1932. This certificate was never delivered to Mr. Fuller, but was kept in the files of the bank, and the evidence discloses that Mr. Fuller never saw or heard of it until it was produced upon the hearing of this cause before the special master. It further appears from the evidence that following the bank moratorium on March 4, 1933, the Commercial State Bank never reopened and in August, 1933, appellee was appointed receiver thereof, and appellant insists that in November, 1933, he went to the bank to file his

claim with the receiver and was advised for the first time that Mrs. Hammerschmidt had a saving account. It was stipulated that a savings passbook was issued in case of all savings accounts, which was to be presented to the bank when money was deposited or withdrawn from the account, that the deposit therein shown was not subject to check unless the passbook was presented and that there was a printed statement thereon advising the customer that the bank on the first of every January and July credited the account with interest whether the customer came to the bank or not. The evidence is that no such passbook came into the hands of appellant as administrator, although he testified that he and the children of his testatrix looked through all her belongings, but were unable to find any such passbook or any reference in any of her papers to any savings account. The evidence further disclosed that some of the officers of the bank assisted appellant in the collection of some of the assets of the estate and knew of the distribution of these assets by appellant to the surviving children of the testatrix. It was stipulated that no adjustment day was ever fixed by appellant for the adjustment of claims against said estate and it was further stipulated that the lowest amount of cash in the Commercial State Bank at any time from November 15, 1925 to August 8, 1933, when the receiver took charge, was $20,710.25.

It is the contention of appellant that the officers and employees of the bank, knowing that appellant was the legally appointed personal representative of Mrs. Hammerschmidt, deliberately failed to reveal to appellant the existence of the savings account, and deliberately withheld from him the certificate evidencing his waiver of 25 per cent thereof, and by so doing dealt unfairly and their conduct was so wrongful and unlawful that a fraud was perpetrated upon appellant and therefore the bank, at the time it closed, held said

savings account impressed with a trust so as to give it a preferred status in the distribution of the assets of the bank.

Counsel for appellee insist that the original relationship which existed between the bank and Mrs. E. Hammerschmidt was that of debtor and creditor; that such relationship continued after her death in favor of appellant as administrator; that the bank was under no duty to seek its creditors or depositors for the purpose of paying them their deposits; that it was appellant's duty to fix upon a day for the adjustment of claims, which was not done; that appellant, as administrator, was bound by the valid contracts made by the deceased and that he never produced any savings passbook or explained that he could not find one or requested that the bank turn over the account to him under any arrangement to take the place of the passbook; that the bank never denied the existence of the account, and as a matter of fact, did not know that Mrs. E. Hammersmith and Lillian Hammerschmidt were one and the same person and that no duty devolved upon the bank to do other than it did do under the circumstances.

Appellant insists that at the time of the death of Mrs. Hammerschmidt, on November 15, 1925, the title to this deposit and the right to recover it passed to appellant. The law is that until appellant presented to the bank his authority to receive this deposit as representative of the deceased, the bank would not have been warranted in paying this deposit to appellant. The law is further that there is no duty cast upon a bank to seek its depositors or personal representative of a deceased depositor in order to pay obligations that may be due from the bank. In the instant case, no demand for the payment of this deposit was made by appellant because he did not know Mrs. Hammerschmidt had any such deposit in the bank to

her credit at the time of her death. The statute prohibited the bank from transferring this deposit to appellant unless a notice of the intended transfer be served upon the State treasurer and attorney general at least 10 days prior to making such transfer. No such notice was given because appellant did not know of the existence of the deposit. The evidence is, however, that appellant inquired of the officers of the bank as to the amount of Mrs. Hammerschmidt's balance and he was correctly informed as to the amount to her credit in her checking account, but the officers remained silent as to the amount to her credit in her savings account. It is true the savings account was an inactive one and was carried on the books of the bank in the name of Mrs. E. Hammersmith, not Hammerschmidt. The officers of the bank knew the method in which savings accounts were handled and if they knew that the owner of the savings account and the owner of the $79.59 checking account was the same person, still the officials of the bank were warranted in assuming that the representative of Mrs. Hammerschmidt's estate would, among her papers, find her passbook or some other evidence disclosing that she had to her credit in the savings department of the bank the amount that the bank's books disclosed. The evidence does not disclose that appellant ever specifically asked any of the officers of the bank about a savings account, but he did ask about the balance to her credit. Of course if those to whom the inquiry was made knew that appellant's testate had a savings account in their institution, good faith required them to give that information to appellant and if the officer who obtained appellant's waiver of 25 per cent of his deposits in January, 1933, knew of this savings account, fair dealing required that appellant should have been informed thereof.

It will be noted in the instant case that although appellant knew of the amount in the bank to the credit

of Mrs. Hammerschmidt in her checking account even before her death, which occurred on November 15, 1925, it was not until April 21, 1928, almost two and one-half years later that he had that deposit transferred to his administrator's account. During those two and one-half years he permitted that deposit to remain in the bank and did not use it either for the purpose of paying debts or making a distribution, although he did make a distribution a year previous, that is, on April 19, 1927.

The evidence discloses that the bank, as long as it remained open, treated this account the same as it did all other savings accounts. It credited the account regularly every January and July with four per cent interest. Whether appellant would have distributed this fund to those entitled to it had he known of its presence is conjectural. Whether he would have had it transferred to his own account as administrator is uncertain in view of his conduct with reference to the deposit to the credit of his testatrix in her checking account. Although almost 10 years elapsed between testatrix's death and the time the evidence was heard in this cause, it appears that her estate has not yet been settled and appellant, as administrator, did not during that 10-year period comply with the statute and fix upon a term of court for the adjustment of claims against her estate.

No authority has been cited and counsel for appellant say none can be found where the facts are at all similar to those disclosed by this record. In support of appellant's contention, however, that the bank, when it closed, held this deposit as a trustee *ex maleficio* the case of *People v. State Bank of Maywood,* 354 Ill. 519, is called to our attention. In that case it was said that all debts, at the time a bank closes, in the absence of priorities prescribed by statute, are of the same rank or level, and a person who seeks a preference over his fellow claimants in the distribution

of the assets of an insolvent bank must show that he occupies some relation to the insolvent's estate which differs from and raises him above the plane of a mere creditor. It appeared in that case that a village treasurer was required by ordinance, passed pursuant to statutory authority, to deposit the funds of the village·in certain designated banks and forbade the deposit of the moneys of the village in any designated bank until such bank should qualify by giving such depository bonds as the ordinance required. It further appeared that the village treasurer had on deposit in the bank at the time it closed in the general village account $52,026.93, which was protected by.depository bonds, executed in pursuance of the ordinances of the village to the extent of $30,000, and one of the questions presented for determination in that case was whether the excess of $22,026.93 in that account constituted trust funds for which the village was entitled to a preference over general creditors. The court held that the power to require the village treasurer to deposit all the funds of the village in depositories which qualify only by giving bonds of indemnity to protect the municipality against loss, when exercised, left no discretion to the treasurer and that all of his deposits must be secured by the requisite bonds of indemnity; that when the treasurer deposited moneys of the village in excess of $30,000, his act in so doing was wrongful and unlawful as to such excess inasmuch as the bank was not qualified to receive it and the receipt of such funds by the bank did not give rise to the relation of debtor or creditor and such funds, deposited in violation of law, did not become assets of the bank but were impressed with a constructive trust and such unauthorized deposits were held by the bank when it closed as trustee *ex maleficio* for the use and benefit of the village.

In the instant case the acceptance of this deposit by the bank in 1916 from Mrs. Hammerschmidt was not

wrongful as was the acceptance of the deposit of the village treasurer by the officers of the State Bank of Maywood. The facts in the instant case are clearly distinguishable from the facts in the *Maywood Bank* case, nor are they at all analogous. In its inception the deposit in the instant case was rightful and at no time did any of the officers of the bank ever deny the existence of this deposit. If they knew the savings deposit belonged to appellant's testate, they remained silent when they should have spoken. While we do not approve of their conduct, we do not believe, under the authorities, that it was such as to make the bank a trustee *ex maleficio*. The order of the chancellor, denying appellant a preference but allowing the claim as a general one, is in accordance with the law and the evidence and will therefore be affirmed.

*Order affirmed.*