American Surety Company of New York, Appellant, v. Robert Lewis Van Osdol, Administrator with the Will Annexed of Estate of Frank A. Van Osdol, Deceased, et al., Appellees.

Gen. No. 9,305.

Opinion filed August 30, 1938.

Warner & Warner, of Dixon, for appellant; Henry C. Warner and Morey C. Pires, of Dixon, of counsel.

Jacob Cantlin and Samuel Rubin, both of Rock Falls, for appellees.

Mr. Justice Wolfe delivered the opinion of the court.

The estate of Frank A. Van Osdol, deceased, is being administered in the county court of Whiteside county. On May 27, 1935, the administrator filed an inventory in which he listed as an ostensible asset of the estate, an item of $2,431.06 in his possession. Statements in the inventory are to the effect that the money is the property of one Mary H. Smith, an insane person. On November 8, 1935, the claim of the American Surety Company of New York of $12,661.22 was allowed against the estate as a claim of the fifth class. The surety company filed objections in the county court against the inventory, based on the contention that the $2,431.06 is in fact an asset of the estate of the decedent.

That part of the inventory now in question is as follows: "Paine, Webber & Company—proceeds of account turned over by C. W. McCall, administrator to collect (after deduction of $100.00 fees allowed him by the court)—$2,431.06. This money apparently should not have been turned over to this administrator with the will annexed for the reason that it represents the trading account had by the decedent with said Paine, Webber, & Company, brokers, which account was secured by certain collateral pledged with said Paine, Webber & Company by decedent, said collateral including four Fourth Liberty Loan bonds belonging to the estate of Mary H. Smith, insane, of which decedent was conservator at the time of said pledging and at the time of this death, and by reason thereof, said bonds

in the aggregate amount of $3,000.00 were the property of and belonged to said insane ward and not to said decedent.''

The part of the objections to the inventory called to our attention is as follows: '' (2) The item of property listed in the sum of Twenty-four Hundred Thirty-one and 6/100 Dollars ($2,431.06) turned over to the administrator to collect, by Paine, Webber & Company, recites that said sum was derived from the sale of collateral including Fourth Liberty Loan bonds belonging to the estate of Mary H. Smith, of which said decedent was the conservator at the time of said pledging, while numerous other Fourth Liberty Loan bonds in the possession of the said Frank A. Van Osdol, as trustee, were also sold by Paine, Webber & Company, and the exact bonds from which said sum of Twenty-four Hundred Thirty-one and 6/100 dollars ($2,431.06) was derived cannot be ascertained.''

The administrator is a mere stakeholder in this proceeding awaiting the determination of the question of the ownership of the $2,431.06. The objection to the inventory is being contested by Ethelyn Van Osdol and John A. Riordon who are sureties on the bond of Frank A. Van Osdol, the decedent, as the former conservator of Mary H. Smith and such conservator at the time of his death. It is not questioned that Ethelyn Van Osdol and John A. Riordon have made good the default of their principal resulting from a conversion of the bonds of Mary H. Smith to the amount of $3,063.76.

Implicated in the recitals in the inventory that the $2,431.06 is the property of Mary H. Smith are the following circumstances related in the statements of facts of the surety company filed in this court. ''Frank A. Van Osdol had been speculating in the purchase and sale of stocks and grain through the firm of Paine, Webber & Company. Two separate accounts were kept by the company with him, a securities (stock) account

and a grain account. On October 1, 1934, Van Osdol was indebted to these brokers in thė sum of $82.73 on his stock account and at the same time had a credit of $2,953.07 in his grain account. Paine, Webber & Company decided that his grain account needed additional margin, and called Van Osdol on October 1, 1934, for such additional margin in the sum of $600.00. On October 3, 1934, Mr. Van Osdol was sent a sellout letter. In response to the threat of sell-out, Van Osdol sent in the four United States Fourth Liberty Loan bonds belonging to the Smith estate. These bonds were received by Paine, Webber & Company on October 8, 1934. The firm cashed the interest coupons on October 15, 1934, for $63.76 and the bonds on October 17, 1934, for $3,000.00 and credited the total proceeds of $3,063.76 to Van Osdol's stock account.''

It is conceded by the parties hereto that Walter Brunton, a representative of Paine, Webber & Company, testified substantially as follows: ''This credit of $3,063.37 in the stock account was used as follows: To pay a pre-existing debit in the stock account of $82.73; to pay a draft for $1,000.00 drawn by Van Osdol on Paine, Webber & Company on October 8, 1934, the date the bonds were received; to pay a debit in his stock account of $1,200.00 resulting from a transfer to his grain account on October 8, 1934, the date the bonds were received; to pay a draft for $700.00 drawn by Van Osdol on October 25, 1934; and to apply the balance of $81.03 upon a transfer of $150.00 on October 23, 1934, from his stock account to his grain account.''

On the day of his death, January 17, 1935, Frank A. Van Osdol authorized Paine, Webber & Company by letter to transfer his account to his wife, Ethelyn Van Osdol. On February 8, 1935, Ethelyn Van Osdol made a written assignment of all her interest in her account with Paine, Webber & Company to Charles W. McCall (administrator to collect), of the estate of Frank A.

Van Osdol, deceased. On February 14, 1935, Paine, Webber & Company paid the sum of $2,531.06 comprising the balance of $2,355.34 in the grain account and $175.72 in the stock account, to C. W. McCall, administrator to collect of the estate of Frank A. Van Osdol, deceased.

The parties hereto agree that the foregoing is a fair statement of the basic facts giving rise to the conflicting claims made in the proceeding as to the ownership of the $2,431.06 listed in the inventory. The objections to the inventory in the county court, and on appeal to the circuit court of Whiteside county, were tested on the right to follow trust funds on the theory that the title to the money existed in Mary H. Smith, the ward during the lifetime of Frank A. Van Osdol, her conservator. It is a question of ownership or title to the money, and not one of preference. An effort is being made to trace trust funds and to impress a trust on the money now in the hands of the administrator of the insolvent estate of Frank A. Van Osdol, deceased, to the amount of the bonds converted by Frank A. Van Osdol as conservator of Mary H. Smith. It is not disputed that the conservator held the bonds as a trustee in his capacity as conservator.

Referring to the statement of facts filed by the surety company, we state that it is conceded by the claimants Ethelyn Van Osdol and John A. Riordon, that the witness Walter Brunton testified in substance as stated in the statement of facts. However, the claimants contend that his testimony should be interpreted under the rule that where trust money is blended by the trustee into an account with money of the trustee, it will be presumed that sums withdrawn from the account by the trustee were monies belonging to the trustee personally, and that the balance remaining in the account includes the trust funds the trustee had no right to use. (*People v. People's State Bank of Maywood*, 354 Ill. 519.)

The stock account and the grain account of Frank A. Van Osdol with Paine, Webber & Company were introduced in evidence. It appears therefrom that on October 3, 1934, Van Osdol was indebted to Paine, Webber & Company in his stock account to the amount of $82.73. On that day his stock account was charged with a debit of $1,000 to pay Van Osdol's New York draft of that amount drawn on Paine, Webber & Company; and also charged with $1,200 for margin in Van Osdol's grain account. The stock account on that date as a result of these charges showed a debit of $2,282.73. On October 8, 1934, Paine, Webber & Company received from Van Osdol the four U. S. Liberty Loan Bonds, the property of his ward, Mary H. Smith, aggregating in principal amount, $3,000. The bonds were coupon bonds and they had been called for payment. Paine, Webber & Company had no notice of the trust. On October 15, 1934, Paine, Webber & Company received the cash for the bonds to the amount of $3,000 principal and $63.76 interest. This amount of $3,063.76 was credited to the stock account of Van Osdol leaving to his credit in that account $781.03, being the difference between the indebtedness of Van Osdol in that account of $2,282.73, on October 3, 1934, and the $3,063.76 cash received from the bonds.

On October 25, 1934, Van Osdol drew out of his stock account by draft in cash the sum of $700, leaving his credit balance in the stock account $81.03. On the same day Van Osdol's grain account was given a credit as margin of $150 being in part the credit balance of $81.03 in his stock account and in part a debit charge in his stock account of the difference, $68.97. When the stock account was debited with $1,200 on October 3, 1934, for margin in the grain account, the grain account was not credited with the amount of $1,200 nor any other sum on that date. However, when the bonds were cashed Paine, Webber & Company credited the grain account with $1,200 as margin. As before stated,

$81.03 of the amount realized from the bonds was also placed in the grain account as margin. Thus, $1,281.03 of the proceeds of the bonds of Mary H. Smith was placed into the grain account. The debit of $1,200 in the stock account as entered on October 3, 1934, and its inclusion in the general debit in that account and the crediting of the $3,063.76 in that account and the actual cash credit of $1,281.03 placed in the grain account, so far as the stock account is concerned, was a mere matter of bookkeeping. The stock account was not increased by the transaction of disposing of the cash received from the bonds, but resulted in a debit in that account of $68.97.

Before the conversion of the bonds, Van Osdol's stock account carried 60 shares of stock of the Chicago & Northwestern Railroad Co., being the individual property of Van Osdol. After the entries were made in the accounts showing the disposition of the proceeds of the bonds, the stock account remained inactive, excepting that it was charged with small items of interest and a credit of $200 transferred from the grain account as excess grain margins. On November 26, 1934, Van Osdol drew out in cash from his stock account the $200, being the last item of credit mentioned, leaving in that account a debit of $72.37. The 60 shares of stock of the Chicago and Northwestern Railroad Company were sold on February 14, 1935, for $260.79, leaving in the stock account when it was closed a net credit of $175.72 after the deduction of a debit of $85.07.

The money received by Van Osdol on the New York draft of $1,000; the $700 received by him on his other draft and the $200 withdrawn by him in cash—all taken from the stock account after the bonds were misappropriated—have not been traced and in particular they have not been traced into the hands of the administrator of the estate of Frank A. Van Osdol as assets of

his estate. The proceeds of the drafts and the sum so withdrawn by Van Osdol from his stock account must be considered as dissipated and lost to the trust estate. The $175.72 received by the administrator was the net credit balance in the stock account and it is the proceeds of the Chicago and Northwestern Railroad stock, less indebtedness in that account, when the account was closed, to Paine, Webber & Company. There was nothing in the stock account belonging to the trust estate.

A part of the funds of Mary H. Smith has been traced to the grain account. There was a preservation of the distinctness of the trust fund to the amount of $1,281.03. (*Woodhouse v. Crandall,* 197 Ill. 104; *People v. Bates,* 351 Ill. 439.)

Before the $1,281.03, part of the proceeds of the bonds of Mary H. Smith, was placed to the credit of Van Osdol in his grain account by Paine, Webber & Company to raise the margin in that account, Van Osdol had a credit in that account of $2,953.07. His net credit balance in that account never fell below $1,281.03 after the conversion of the bonds. On January 12, 1935, Van Osdol drew in cash from his grain account, $300. We presume that this amount was the property of Van Osdol and not part of the trust funds. (*People v. People's State Bank of Maywood, supra.*)

Owing to dealings of the Van Osdols in grain margins there was a gain in the grain account on February 11, 1935, of $98.71 and losses from January 12, 1935 to February 11, 1935, of $1,447.73, leaving, however, a net balance of $2,355.34 in the grain account (after deducting the $300 withdrawn in cash by Van Osdol) when the account was closed and the $2,355.34 was paid to the administrator to collect of the estate of Van Osdol. As before stated, the net credit balance in the grain account during the currency of the mingled fund was never less than $1,281.03. We

presume therefore, that the amounts lost or dissipated in the grain account by the Van Osdols' dealings on the grain market were the funds of Van Osdol or Ethelyn Van Osdol and not those of the trust estate. After the bonds were misappropriated by Van Osdol, the grain account was not increased by any amount as additional margin. It is reasonable to believe that if the margin in the grain account at any time fell below the amount required for transactions involved in so-called dealings in ''futures'' in grain, the broker would have called for additional margin or would have ''sold out'' the account. It is not therefore, to be presumed that the Van Osdols were not able during the currency of the mingled account to draw out the net credit balance in the grain account.

The objections of the Surety Company to the inventory filed in the estate of Frank A. Van Osdol were overruled by the county court and the administrator of the estate was ordered to pay the $2,531.06, being the total of the net credits in the stock account and the grain account when they were closed, to the conservator of Mary H. Smith. On appeal to the circuit court from the order of the county court, the circuit court entered an order sustaining the objections to the inventory as to the sum of $167.30 and overruling the objections as to the sum of $2,363.76 and directing the administrator to pay the sum of $2,363.76 to the conservator of Mary H. Smith.

We observe that the administrator to collect in the estate of Frank A. Van Osdol was allowed the sum of $100 fees and expenses for collecting the $2,531.06 from Paine, Webber & Company. This cost of $100 must be charged to the assets of the estate of Frank A. Van Osdol and not to the trust funds. It was an expense to collect the assets of the decedent's estate.

The order of the circuit court of Whiteside county is reversed and the cause remanded to that court with

directions to enter an order finding that the trust funds of Mary H. Smith have been traced to the grain account of Frank A. Van Osdol, deceased, to the amount of $1,281.03 and directing the administrator of his estate to pay out of the money now in his hands as shown in the inventory filed in the estate of Frank A. Van Osdol, deceased, as herein before set forth, the sum of $1,281.03 to the present conservator of Mary H. Smith, insane, and to account for the balance of said money, so mentioned in said inventory, in the due course of administration in the county court of said county.

The costs of this appeal are taxed one-half thereof to the American Surety Company and one-half thereof to Ethelyn Van Osdol and John A. Riordon and to the two last mentioned jointly and severally for their part.

*Reversed and remanded with directions.*