GEORGE WILSON *et al.*

*v.*

EDWARD P. KIRBY, Exr. etc.

1. ADMINISTRATION—*what is money in trust, to be allowed in sixth class.* Where a party bought cattle with his own money for another to pasture and feed, under an agreement that the cattle were to belong to the former, who was to sell the same, and after deducting the money advanced in the purchase, with interest and expenses and commissions, pay over the balance to the latter, and the latter sold a portion of the cattle and received the proceeds before his death, and the money could not be identified, it was *held,* that such money was not trust money, within the meaning of the statute classifying claims against estates, and that the owner of the cattle was not entitled to have his claim for the same allowed in the sixth class; but as to another lot, sold just before the death of the party intrusted with the cattle, where the proceeds of the sale could be identified, and which came to the hands of his executor, the owner was entitled to have his claim for his share of the proceeds allowed in the sixth class.

2. Another portion of the cattle remained undisposed of at the death of the party who, under the contract, was to feed and pasture them, and were on the pasture of a third person, who held a lien on the cattle for his rent. These cattle were subsequently sold under a stipulation of all the parties interested that the proceeds of the sale should be deposited, to await the settlement of the rights of the parties. It was *held,* should there remain any surplus of these proceeds, after satisfying the claim for rent, there should be a like allowance in the sixth class to the extent of such surplus.

3. SAME—*statute construed.* The clause of the statute relating to the classification of claims against estates of deceased persons, and which gives a preference in cases where the deceased has "received money in trust for any purpose," does not necessarily extend to and embrace every kind of trust. It does not embrace trusts implied by the law.

4. USURY—*not presumed.* Usury is not to be presumed in a transaction, but must be shown by the party setting it up. In this case, where a party was to

buy and did buy $50,000 worth of cattle, which another was to keep and prepare for market, and the purchaser of them was to sell them to reimburse his advances, with interest, and receive commissions for purchasing and selling, it was claimed there was usury, as the purchaser did not advance all the money at once, and rendered no services for the reserved commissions, but it did not appear that the whole sum was not held and kept ready to pay for the cattle from the time of making the contract. The court *held*, that the facts did not show usury, there being no allowance of the commissions, as no services were rendered.

APPEAL from the Appellate Court for the Third District; the Hon. C. L. HIGBEE, presiding Justice, the Hon. OLIVER L. DAVIS, and the Hon. LYMAN LACEY, associate Justices.

Messrs. DUMMER, RUSSELL & BROWN, for the appellants.

Mr. A. L. ROCKWELL, and Mr. D. GOODWIN, JR., for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This is an appeal from the Appellate Court for the Third District. The case was one of the presentation of a claim before the county court of Morgan county, for establishment against the estate of John T. Alexander, deceased, and for its allowance as a claim of the sixth class—that is, as a preferred claim, under the following provision of the statute in relation to the classification of claims against the estate of a decedent:

"Sixth. Where the decedent has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for."

The judge of the county court being interested in the estate as the executor, it was so certified to the circuit court of Morgan county, and the case was heard before that court as provided by the statute, and the claim allowed for the amount of $55,-118, as a claim of the seventh ·class, that of general creditors, and refused allowance as a claim of the sixth class. On appeal, the Appellate Court affirmed the judgment of the circuit court. The claimants took this appeal from the judgment of the Appellate Court, and make but the single point against the

judgment, the disallowance of their claim as one of the sixth class.

The claim in question arises under a written agreement made between the claimants, George and Hiram Wilson, and John T. Alexander, bearing date the 1st day of September, 1875, which provided generally, that the Wilsons on their part would assist in purchasing at Chicago, or any other good market, not less than one thousand, and not to exceed fifteen hundred, head of steers, a class of cattle that would cost not less than $50,000, and pay for the same, and have them shipped to Alexander to be fed and cared for by him on his farm until ready for market, when they were to be delivered to the Wilsons for the purpose of being sold in the best market; Alexander to assist personally in the purchase and sale; he was to brand them when received, on the right horn W. M., and J. A. on the left horn, he to receipt for the same; and as a consideration for his services, and feeding and taking care of the cattle, the Wilsons were to pay him, after the cattle were sold, whatever remained of the net proceeds of their sale after paying the Wilsons the amount of the purchase money of the cattle, and all expenses incurred by them in the purchase and sale, with ten per cent interest on both said items; that the Wilsons should have ten per cent interest on the $50,000 invested in the cattle, from the date of the agreement. The Wilsons were to have further, $2000 for commissions for services rendered in purchasing and selling the cattle by them. It was expressly understood that the Wilsons should have the exclusive control of the cattle, to sell and dispose of them when and where they deemed best, exercising the ownership of the cattle, and that if at any time Alexander should fail to properly take care of the cattle, or they should be levied on or attached by his creditors, or if the continued possession of the cattle by Alexander should seem hazardous to the Wilsons, they should have the right to take immediate possession of the same, and have them sold or cared for as they might consider best. Alexander guaranteed to the Wilsons, out of the investment, the

amount invested, the interest as stated, and the commissions; he was to keep good the original number of the cattle.

Afterward, Alexander gave to the Wilsons a receipt in writing, of the date of December 7, 1875, specifying that he had that day received from them eleven hundred and fifty cattle, costing the sum of $50,000, and branded them all on the right horn with their brand W. M., and J. A. on the left horn, in compliance with the above contract.

A portion of the cattle were shipped and sold by Alexander in the months of June, July and August, 1876, and the proceeds of the sales received by him, exceeding in amount the claim of the appellants, and no part of the proceeds were accounted for to them. In the latter part of July, 1876, Alexander went East, taking with him one hundred and seventy-seven head of the cattle. He came back on the 17th August, 1876, ill, and died on the 21st of August, 1876. After he returned he was too ill to transact any business or to see any one on business. He brought back with him $20,000, which was paid over to his executor.

The claim as presented is for money received from the sale of the cattle. The point of inquiry is, whether it was received "in trust for any purpose," within the contemplation of those words as employed in the statute.

By the act of 1871–2, a change was made in the law classifying claims against the estate of a deceased person, in the particular in question. Previously, the law was, that "where an executor, administrator or guardian has received money as such, his executor or administrator shall pay out of his estate the amount so received and not accounted for, which shall compose the third class." The Revised Statutes of 1874 adopt the enactment of 1871–2, being the provision of the present statute as first above quoted. The change made in the law as it stood before 1871, was, to strike out the words "where an executor, administrator or guardian has received money as such," and insert the words "where the decedent has received money in trust for any purpose." It is certain that the legis-

lature, by the phrase "in trust for any purpose," intended to extend the class of preferred claims, but how far, admits of question.

The claimants contend that the broad terms of the statute extend to embrace all trusts in the widest meaning of the term, and that if the money received had been received as "a trust for any purpose," upon any kind of trust, then it shall be a preferred claim.

In Perry on Trusts, § 1, it is said: "The word 'trust,' in its popular and broadest sense, embraces a multitude of relations, duties and responsibilities. Thus, executors and administrators, guardians of infants and lunatics, assignees in insolvency and bankruptcy, bailees, factors, agents, commission merchants, and common carriers, as well as the officers of public and private corporations, all exercise a kind of trust." In *Chapman* v. *Forsyth*, 2 How. 202, a question arose under the first section of the Bankrupt act of 1841, providing for discharge in bankruptcy of "all persons * * * owing debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity," and the court there say: " The second point is, whether a factor who retains the money of his principal, is a fiduciary debtor within the act. If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and, indeed, all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of implied, but special trusts, and the 'other fiduciary capacity' mentioned must mean the same

class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act." And see *Cronan* v. *Cotting*, 104 Mass. 245; so, too, in *Doyle* v. *Murphy*, 22 Ill. 502, it was held by this court, where money is delivered to a person to pay debts, which he converts to his own use, it does not enable the heirs of the party who reposed confidence, to convert the money into a trust fund; and as to the jurisdiction of a court of equity in the case, the court said, " That the court has such a jurisdiction in cases of strict trust, there is no doubt; but it does not therefore follow, that the court will assume jurisdiction in every case where a mere confidence has been reposed or a credit given. The various affairs of life in almost every act between individuals in trade and commerce, involve the reposing of confidence or trust in each other, and yet it has never been supposed that because such a confidence or trust in the integrity of another has been extended and abused, therefore a court of equity would in all such cases assume jurisdiction."

There is no doubt, from the contract here, that the cattle were, as between the parties, to be fully the property of the Wilsons, so far as necessary to secure to them the reimbursement of their advances, and so of the proceeds of their sale; and the law would imply, from the contract, that Alexander received the proceeds in trust to pay the same over to the Wilsons to the extent of their claim; but the contract did not create any express trust that Alexander should sell the cattle, receive the proceeds and pay the same over to the Wilsons to the extent of their claim.

By the terms of the contract, the cattle, when ready for market, were to be delivered to the Wilsons, for the purpose of being sold, and Alexander was but to assist in selling them, and, after the sale, the Wilsons were to pay to Alexander the net proceeds of the sale, after paying their own claim. So that all the trust there is, as respects these proceeds, is one which the law implies from the contract. The broad terms

of the statute, "in trust for any purpose," do not necessarily embrace every kind of trust, any more than in the case of *Chapman* v. *Forsyth, supra,* where the word "trustee" was used, and the language there held with reference to that term, and "other fiduciary capacity," would seem to admit of application here. We do not think the word "trust," as used in the statute here, is to be taken in its larger sense, as claimed by appellants, and spoken of in the above authorities, but that it is to be held as used in the more.restrictive sense of the term.

We do not regard that there is any more of a trust in this case than there would be in that of a mortgagor in a chattel mortgage, to whom had been intrusted the possession of the property mortgaged, who should sell the same and retain the proceeds from the mortgagee, or in the case of a bailee, who should do the like with respect to property bailed to him, in violation of the terms of the bailment. We can hardly think that in such cases the money could be held as having been received in trust, under this statute; and if not, we think it should not be so in the present case. We perceive no essential difference between the cases, in principle.

We view the substance of the transaction here was a loan of money by the Wilsons upon the security of the cattle, to be held as their property, for the repayment of the money. There is a breach of contract in not paying over the proceeds of the sale of the cattle. There is, too, a liability therefor as for money had and received to the use of the Wilsons, but they do not constitute a trust fund in the proper sense; and we must hold that the money is not to be considered as having been received in trust for appellants, within the meaning of that term as employed in the statute, entitling the claim to be allowed as a preferred one of the sixth class.

We make exception, however, of the portion of the proceeds of the sale of the cattle which was in the hands of the decedent at his death, and was paid over to the executor. These proceeds stood in the place of the cattle sold, as their substitute or representative, and were the property of the

Wilsons, as the cattle were, under the contract, and can be traced and identified as their particular property, and may be followed into the hands of the executor, and they have a preferable claim thereto over general creditors.

The county court, acting as a probate court, may apply equitable principles in the adjustment and allowance of claims against the estate of a decedent, as has often been recognized by this court. A part of the $20,000 which Alexander brought back with him on his return from the East, where he had taken and sold one hundred and seventy-seven head of the cattle, and which was paid over to his executor, is to be taken to be the proceeds of the sale of those cattle, amounting to some $10,000 and over, as may be inferred from the testimony, and, to the extent of such proceeds, appellants' claim should have been preferred, and allowed in the sixth class; and if further proof should show the $20,000 to include any proceeds of the sale of any more of the cattle than the one hundred and seventy-seven head, all of such included proceeds should be thus allowed.

A similar remark may be made with reference to one hundred and forty-three head of the cattle which remained undisposed of at the death of Alexander, and were on the Orear pasture, leased from Orear. By the terms of the lease, Orear had a lien on the cattle to secure the payment of the rent of the pasture, and, after the death of Alexander, the cattle were sold under a stipulation of all the parties interested that the proceeds of the sale should be deposited, to await the settlement of the rights of the parties. Should there remain any surplus of these proceeds, after satisfying the claim for rent, there should be a like allowance to the extent of such surplus.

Appellee assigns as a cross-error the allowance of any interest, claiming that there was usury in the contract. It is said the $50,000 was not all advanced at the time of the making of the contract September 1, 1875, and that the $2000 commissions was a device to cover usury. Usury is not to be presumed; it must be shown. It does not appear that the money

was not held and kept ready to pay for the cattle from and after the time of the making of the contract. The $2000 was specified to be for services to be rendered in the purchasing and selling of the cattle. If none were rendered, as there were not, then the $2000 would not be payable, and it does not appear to have been allowed.

We can not say that the court below erred in finding that the contract, on its face, did not show usury, or that usury was not, in fact, received.

The judgment will be reversed, for the error above indicated, with respect to a portion of the claim, and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCOTT: I concur in the construction given to the statute, but not in the opinion on the other branch of the case discussed.

Mr. JUSTICE DICKEY: I concur in the view that the money advanced by the Wilsons to Alexander did not constitute a trust fund, and that the claim of the Wilsons against the estate, on that account, should not be placed in class six; but I do not comprehend how it can be held that the proceeds of the sales of cattle, which were in the possession of Alexander at the time of his death, and which were the property of the Wilsons, can in any sense constitute a claim against the estate.

If the money was the property of the Wilsons, the executor had no right to interfere with it. It was only with the property of the decedent that he had to do. The mere fact that Kirby, the executor, did take possession of the same, did not make the same assets belonging to the estate. The claim of the Wilsons, in such case, is against Kirby personally, for money had and received to their use, and not against the estate, to which the money did not belong.