# In re Estate of Leonardo Melone, Deceased.
## Giulio Grieco, Appellee, v. Chicago Title & Trust Company, Appellant.

### Gen. No. 31,869.

1. ESTATES OF DECEDENTS—*what constitutes trust claim on failure to transmit money.* Where a person receives a certain sum of foreign money under an agreement to transmit it directly to a foreign bank for the sender regardless of any rate of exchange, and he has no banking connection or credit with the foreign bank, a claim against his estate by the sender, after his conversion of the money to his own use, is properly allowed as claim within the fifth class under section 70 of the Administration Act, Cahill's St. ch. 3, ¶ 71, as money received in trust.

2. ESTATES OF DECEDENTS—*use of directions on back of receipt of money in determining nature of claim.* Where a person receives a certain sum of money under an agreement to transmit it directly to a foreign bank for the sender regardless of any rate of exchange, and he has no banking connection or credit with the foreign bank, little weight should be given to the directions on the back of the receipt in determining whether the sender's claim against his estate, after his conversion of the money to his own use, should be allowed as a claim within the fifth class as money received in trust or within the sixth class as mere business transaction, where the receipt is a mere blank form in general use referring to the decedent as a bank and he did not comply with the ordinary rules of banking surrounding a banking corporation or the statutory requirements of such a business.

3. ESTATES OF DECEDENTS—*when failure to transmit money as not resulting in "technical trust" claim.* Where a person receives a certain sum of foreign money under an agreement to transmit it directly to a foreign bank regardless of any rate of exchange, and he has no banking connection or credit with the foreign bank, upon converting the money to his own use he does not hold it as a "technical trust," which would require the sender's claim against his estate to be allowed as a claim under the sixth class rather than under the fifth class.

Appeal by defendant from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1927. Affirmed. Opinion filed January 18, 1928. Rehearing denied January 30, 1928.

DAWSON & DAWSON, for appellant; MITCHELL DAWSON, of counsel.

ROBERT F. KOLB and HENRY M. TUFO, for appellee.

MR. JUSTICE WILSON delivered the opinion of the court.

The facts in this case show that the deceased, Leonardo Melone, had conducted a so-called private banking business in his grocery store at 602 West Taylor street, in Chicago (adopted from statement of facts in appellant's brief). He also accepted money for deposit, giving a form of deposit book showing entries and withdrawals: He died on March 5, 1925, and the claimant, Giulio Grieco, filed his certain claim in the probate court against the estate of the deceased, claiming it to be a trust fund, and asking to have his claim classified as of the fifth class. It appears that on December 31, 1924, he had on deposit with the deceased certain moneys, and on the day in question he withdrew $2,300 in cash. The deceased then asked him what he was going to do with the money and he told him he was going to send it to Italy. The deceased then asked him why he could not transmit it for him; and there seems to have been a discussion as to whether or not the deceased would send it as cheaply as the claimant could have it transmitted through some other source, and thereupon an agreement was entered into by which the deceased agreed to give the claimant 55,000 lire for the sum of $2,337, and to send it to the Banca Popolare Cooperativa at the post office of Alfadena, Province of Aquila, Italy. The claimant, thereupon, gave the deceased the $2,300, which he had just withdrawn and which he had in his possession, together with $37 which he took from his pocket and added to the $2,300. The deceased then issued a certain receipt which on its face contained the amount of the lire received—namely 55,000—the date and the place to which it was to be sent. On the back of the receipt there appear certain conditions tending to limit the liability of the deceased, referring to himself as a bank, and stating that in case

payment could not be made, reimbursement would be made on the basis of the rate of the Chicago and New York Stock Exchange for the foreign value specified, following notice from the foreign country. It stated further that in executing said remittance the bank would act merely as an agent of the sender and was not assuming any liability for errors, mutilations, omissions, etc., in its transmission and delivery, or for any loss caused by any other agency outside of the one controlled by the bank. There does not appear to be anything in the record indicating that the deceased had any foreign banking connections or any domestic banking relations, and, so far as the record discloses, the money was to be sent directly to the Banca Popolare Cooperativa at the address named in the receipt. The nature of the transaction itself precluded any question of change of rate of exchange, as it appears definitely that the 55,000 lire purchased at the time was to be sent directly, regardless of any change in the rate of exchange. It was agreed Melone never sent the money to Italy. The natural inference to be drawn from all the facts would be that the money was converted by him to his own use.

On the hearing in the trial court the claim was allowed as a claim coming within the fifth class under section 70 of the Administration Act of Illinois, Cahill's St. ch. 3, ¶ 71. That part of this section which is applicable to this case reads as follows:

"Where the deceased has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for."

It is insisted by counsel for the estate that, firstly, this transaction did not in fact create a trust but was a mere business transaction and consequently the claim against the estate should have been classified under the sixth section of the Administration Act, Cahill's St. ch. 3, ¶ 71, which is applicable to all other

debts and demands of any kind or character whatsoever; and, secondly, that this is not such a trust as was intended by this particular section of the Administration Act.

Our attention has been called to a number of cases involving transactions with banks, where the banks agreed to transmit, at the request of depositors, moneys to the depositors' credit in banks in foreign countries. In this connection counsel cite the cases of *Beecher v. Cosmopolitan Trust Co.*, 239 Mass. 48, and *Legniti v. Mechanics' & Metals Nat. Bank of New York*, 230 N. Y. 415. In the Massachusetts case it appears that the bank involved had a correspondent at the point in Europe where the delivery was to be made and that, as a matter of fact, the Cosmopolitan Trust Company had a credit with said bank and had drawn against that credit in satisfaction of the claim of Beecher, so that the transaction was a business transaction transferring a credit from one bank to another. The court in its opinion says that there being no contention that the trust arose through the fraud or bad faith of the company or its officers in receiving the money of the plaintiff with knowledge of its insolvency, the argument that there was a trust created by the delivery of the money to the trust company for remittance must stand or fall upon the facts, or the absence of fact, that the money was received by the defendant trust company as a special deposit for transmission to its correspondent bank in Roumania. We do not believe that the principles involved in that case are applicable to the facts disclosed by the evidence in the case at bar.

In the New York case, *Legniti v. Mechanics' & Metals Nat. Bank of New York, supra,* it was held that the transaction on the part of the plaintiff was a purchase of credit and not the transfer of specific money, and that therefore no trust attached to the proceeds of the check in the hands of the bank,

As we have already stated, there does not appear to be any evidence indicating that the deceased had any banking connections or credit at the bank where the money was to be sent, nor was there any issuance of any drafts; but the facts clearly indicate that the transaction involved merely the transmission of the exact amount of money or lire to the particular bank designated in Italy. The money in the hands of the deceased was converted and embezzled by him, and immediately a situation arose which created a trust fund in his hands for the benefit of Grieco. Our Supreme Court in the case of *Blair v. Sennott*, 134 Ill. 78, in its opinion at page 87, says:

"Money of the principal in the hands of the agent is still the money of the principal, and the agent has no right to use it or pay it out for his own private purposes. While he has this money, he is not, technically, the creditor of his principal, but simply his trustee. (Mechem on Agency, sec. 780.) It is, in such case, therefore, always the legal presumption that the money in the hands of the agent is the identical money that he received, and he will not be heard to allege his embezzlement or breach of trust to escape a liability arising from that presumption. Mechem on Agency, sec. 785; Story on Agency, secs. 229, 230; *Trustees v. McCormick*, 41 Ill. 323; *Cottom v. Holliday*, 59 id. 176."

We cannot say that much weight should be given to the directions on the back of the receipt issued by the deceased, as it appears, in the first place, that the transaction was a direct transaction involving the sending of the money to Italy and there could be no question of exchange that could arise; and further the instrument appears to have been a blank form in general use referring to the deceased as a bank, when there is no evidence in the record to support the proposition that he was in any way complying with the ordinary rules of banking surrounding a corporation incorporated for the particular purpose of banking, nor

with the requirements regulating such a business as required by the statutes.

For the reasons stated, we believe the money in question was a trust fund and could have been recovered, as such, from Melone immediately upon his failure to transmit it in accordance with the terms of the trust. Counsel for the defendant argues, however, that by reason of the death of Melone the trust thereupon fails to come within the provisions of the Administration Act when filed as a claim against the estate; that while the act itself provides that where a deceased has received money in trust for any purpose, nevertheless, this means only where it is in fact a technical trust and not an implied trust. Trusts in the law are resulting or constructive trusts, express or implied trusts, and we are unfamiliar with the so-called "technical trusts" except as we learn of them in the decisions of this State where it is attempted to create a technical trust for the purpose of distinguishing the statute in regard to the administration of estates. This court in the case of *Witwer v. Ruth,* 214 Ill. App. 477, says in its opinion at page 479:

" 'Where the deceased has received money in trust for any purpose, his executor or administrator shall pay out of his own estate the amount thus received and not accounted for.' Counsel for the Rippel estate contends that this classification applied to 'technical trusts only.' This observation we are unable to fathom. Trusts arise from the relationship of the parties either expressed of by implication from such relationship."

The Supreme Court of this State has in several cases referred to the character of trusts indicated by section 70 of the Administration Act, Cahill's St. ch. 3, ¶ 71, as "technical trusts," and indicates in its opinion that such a trust is one that does not arise from implication or from a contract, but should be construed in a more restrictive sense. A careful reading of these cases, however, would show that it is the intention of

the courts of this State, in claims of this character, not to permit trusts to arise under the Administration Act, Cahill's St. ch. 3, where the transaction is an ordinary business transaction between principal and agent or persons occupying a business relationship. We are of the opinion that the facts in this case are such that it does not come within the meaning of the definition of "technical trusts" as applied by courts of this State for the following reasons: The transaction between the parties, as shown by the oral testimony and the instrument in writing, would create a situation by reason of which a trust was created which was more than a trust implied by contract. There was only one duty devolving upon the deceased, namely, to transmit the money in his hands which was given to him for the purpose of transmission and which involved no matter of discretion on the part of the deceased, nor any obligation or duties in that regard, except the one expressly required of him. Moreover, the money so intrusted to him was embezzled and fraudulently converted to his own use, and the deceased himself would have been estopped to deny a trust; and for the same reason his estate should be estopped to deny the trust. We find this distinction is recognized in the case of *Svanoe v. Jurgens*, 144 Ill. 507, in which case the court at some length attempts to define the terms "special" or "technical" trusts as distinguished from those which the law implies from a contract; and after a lengthy opinion, citing the cases dealing with this question in this State, at page 515, the court says:

"We agree with counsel for appellee, that *an agent, who receives the money of his principal, holds the same in trust,* and must be held strictly to the liability of a trustee as between himself and the man for whom he acts. (*Blair v. Sennott*, 134 Ill. 78, and authorities cited). But the trust in the present case is one which arises out of an ordinary agency, and therefore does

not come within the meaning of the statute above quoted."

We believe the distinction made in the case above cited is applicable to the case at bar. The facts in the case at bar show that it was not an ordinary transaction of agency but that Melone received the money of the claimant, in trust, for the specific purpose of transmission and not in the ordinary course of business, as in a transaction between principal and agent.

For the reasons stated in this opinion, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

TAYLOR, P. J., and HOLDOM, J., concur.