The People of the State of Illinois ex rel. Edward J. Barrett, Auditor of Public Accounts of the State of Illinois, Complainant, v. Cairo-Alexander County Bank, Defendant.

Cairo Bridge Company, Appellant, v. William L. O'Connell, Receiver of Cairo-Alexander County Bank, Appellee.

Opinion filed September 16, 1935. Rehearing denied October 21, 1935.

WILLIAM S. DEWEY, of Cairo, and WINSTON, STRAWN & SHAW, of Chicago, for appellant.

M. J. O'SHEA and ALEXANDER WILSON, both of Cairo, and JOE CRAIN, of Mound City, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

The Cairo Bridge and Terminal Company was, on April 6, 1932, a depositor in the Cairo-Alexander County Bank, having a "General Account" of $21,024.10 and a "Petty Cash" account of $1,500. On that date Wesley E. Cummins and Walter H. Wood were appointed receivers of the bridge and terminal company by order of the United States District Court. On the suggestion of the court to which they were accountable the receivers had a conversation with David S. Lansden, president of the bank, in November or December, 1932, in which the receivers stated to the bank president that they must have security for the general account or they would have to withdraw it. The president stated that it would be impossible to give a depository bond, but that the receivers could be protected by the creation of a trust account in the trust department of the bank. The bridge receivers then verbally agreed to the transfer. On January 14, 1933, the president of the bank delivered a letter to the cashier that the receivers' account should long since have been transferred to the trust department, and ordered it done without delay.

On January 31, 1933, the Cairo bank, to carry out the agreement, transferred the sum of $33,083.13, then standing as the receivers' general account, to the trust department of the bank, and placed it there as "Trust Number 71, Name: W. E. Cummins and W. H. Wood as Receivers for the Cairo Bridge and Terminal Co." Thereafter the above amount was carried only as a trust account. It remained intact. All checks drawn and deposits made by the receivers were handled through a distinct general account carried at the bank.

In June, 1933, the property in the hands of the receivers was assigned to a new company, the Cairo Bridge Company, petitioner.

On March 3, 1933, the Cairo bank was closed by the bank moratorium of the State of Illinois, and never

again opened for general business. W. S. Corbley, appointed by the State auditor of public accounts, acted as conservator until August 2, 1933, when the State auditor of public accounts took possession of the bank. On August 15, 1933, the auditor appointed William L. O'Connell as receiver of the Cairo bank, and since that time he has been acting as such.

The lowest cash balance in the Cairo bank between January 14, 1933, and March 3, 1933, was $74,119.54 which consisted of actual cash, $38,315.42; clearing checks, $1,610.88; cash items, $17.33; cash in transit, $7,946.39; due from banks, $24,729.52; and due from Reconstruction Finance Corporation, $1,500. This was on January 27, 1933. On January 31, 1933, the day of the transfer of the bridge receivers' account from the commercial department to the trust department, the cash balance was $85,580.12 consisting of: actual cash, $38,116.53; clearing checks, etc., $1,207.76; cashier's cash items, $33.58; cash items in transit, $7,069.36; due from banks, $41,180.69; due from Reconstruction Finance Corporation, $1,500.

The lowest cash balance in the Cairo bank between March 3, 1933, when the bank closed, and August 15, 1933, when the bank receiver took possession, was $20,186.32 consisting of: actual cash, $15,577.92; and due from banks, $4,608.40.

The accounts of the trust department of the bank stood at $29,256.48 on January 30, 1933. The increase from that figure to $72,095.82 on January 31, 1933, is due almost entirely to two large deposits, one for $33,083.13 being the bridge receivers' transfer to the trust department, and another one for $9,744.21.

Mr. Roos, who was vice president of the Cairo bank at the time of the transactions involved in this suit testified that the cash of the bank and the trust department were identical: "The Trust Department deposited its cash in the bank just the same as if any

other depositor would deposit his account, but it was kept separate in the books." Question: "Then, if I understand you correctly, you had one set of books which you kept for the bank and one set which you kept for the Trust Department?" Mr. Roos: "That is correct." Question: "But the funds of the Trust Department were deposited in the funds of the bank?" Mr. Roos: "That is correct." Question: "Was it, or not, the practice of the Cairo-Alexander County Bank to mingle the funds of the bank, rather of the Trust Department, with the funds of the bank?" Mr. Roos: "Yes as is always done by a bank acting in that capacity." David Lansden, who was president of the Cairo bank, at the time of the transfer involved here, testified that the trust department money and the general funds of the bank went into a common till. "It went into separate accounts but all went in as assets of the bank."

In the transfer of the bridge receivers' account from the commercial department to the trust department no cash was actually withdrawn and redeposited. A debit slip was made out for the commercial account and a credit slip for the trust account, and appropriate book entries were made.

Apparently, the Cairo bank had been attempting to enforce a five per cent limit on withdrawals from general accounts prior to the conversation between the bridge receivers and the Cairo bank president concerning the creation of the trust account. The president testified that the limit was, in his opinion, binding on no one but that it was enforced where possible. He does not recall that the bank attempted to enforce this limit with respect to the bridge receivers' account.

The Cairo bank was qualified to act as a trust company and had on deposit with the auditor of public accounts, securities in the amount of $65,000.

On September 18, 1933, the Cairo Bridge Company, petitioner, filed with the bank receiver its claim in

writing for the trust account and the general account. The trust claim was included in the list of claims of the trust department of the Cairo bank as filed in this cause by the bank receiver, appellee, on August 25, 1934. Among the list of claims proved in the trial court is Trust Department Account #5487—Claim #5487–17 for $33,083.13. This is listed in the name of the bridge receivers but is the same account that was assigned by the bridge receivers to the Cairo Bridge Company.

On May 5, 1934, the bank receiver had filed a petition with the court asking authority to procure a loan of $619,000 from the Reconstruction Finance Corporation secured by a pledge of the Cairo bank's assets. On May 21, 1934, the petitioner, Cairo Bridge Company, had filed an intervening petition setting forth the alleged trust, objecting to the petition for a loan unless the court would first declare the claim of the bridge company a preferred claim, and asking that the bank receiver be prohibited from creating a first lien on the assets without first making provision for payment in full of the bridge company's claim. Alternative requests to the same effect were made in the intervening petition. The trial court had on May 21, 1934, allowed the petition for authority to borrow from the Reconstruction Finance Corporation and to create a first lien on the assets subject to the claim of the Cairo Bridge Company for preference if proved by competent evidence and allowed by the court on final hearing.

Subsequent to the filing of the list of trust claims, including, as hereinbefore stated, the claim of the Cairo Bridge Company, the court entered an order on September 22, 1934, containing the following reference to the trusts listed:

"It further appears to the Court that the said Cairo-Alexander County Bank, besides being organized and having a charter from the State Auditor of Public Accounts of Illinois, lawfully to do a banking business,

also, in addition thereto, is lawfully authorized before and at the closing of said bank and had been granted a certificate of authority under the provisions of the laws of the State of Illinois to conduct and maintain a trust department in said bank, and that the same was granted authority by the State Auditor of Public Accounts of Illinois to operate and have and do a trust business, and that said bank and trust department had many and different trusts and that there had been filed with said petition the names and amounts that appear on the trust records of said bank filed herein and that the same should be deemed correct and true as claims of the trust department against said bank.

"It is therefore ordered, adjudged and decreed that the Court approve the lists thereof, and that the same be deemed true and correct lists as shown therein, and that the prayer of the petition be granted."

On September 27, 1934, the bank receiver, appellee, filed his answer to the intervening petition of the Cairo Bridge Company, denying the Cairo Bridge Company's claim to preference. The answer admits the deposits in the Cairo bank, admits that the ledger of the trust department and records of the Cairo bank show the transfer of credit, neither admits nor denies the agreement of the bridge receivers and the bank president concerning creation of a trust account, and asks a determination whether it was legal, neither admits nor denies the placing of the sum of $33,083.13 in the trust department, neither admits nor denies the proceedings resulting in assignment of the bridge receivers' interest to the Cairo Bridge Company, and alleges no notice of the assignment. The answer alleges that the sum was a general deposit, that the trust department deposited $50,000 with the auditor of public accounts as security for its trusts and that if the trust is valid the only recourse is against the said deposit with the auditor. The answer admits the petition for leave to pledge the assets and denies that the

Cairo Bridge Company is entitled to a preferred claim. After a hearing, the court, on October 5, 1934, found that the funds of the bridge receivers claimed by petitioner, appellant, constituted a general deposit.

Appellant contends that the order of September 22, 1934, hereinbefore set forth, was an adjudication that a trust had been established by the action of the president of the bank and the receivers of the bridge company. This is a proper construction of the court order. The record, which shows first a claim by the intervening petitioner, the bridge company, that it is entitled to assert a trust claim, second that the bank receiver applied to the court to have the trust claim deemed correct, third that the court adjudged the claim a proper trust claim, fourth that the bank receiver then answered the intervening petition with the assertion that the claim was not a trust claim, and fifth that the court then decreed that the claim amounted only to a claim for a general deposit, is a record which requires further explanation than is given in the briefs of either party. However, this court is of the opinion that the facts are sufficient to establish a trust in favor of the bridge company.

No particular form of words is necessary to establish a trust if the intention of the parties is clear. *Osborn v. Rearick,* 325 Ill. 529, 533.

A trust of personal property may be created by parol. *Maher v. Aldrich,* 205 Ill. 242, 254. The conversations between the bank president and the receivers of the bridge and terminal company clearly show an intention to create a trust.

The adjustment of the records of the bank and the trust company by debit and credit slips, and book entries, and the separation of bookkeeping with respect to this account and the checking account of the bridge receivers clearly show an attempt to carry out the agreement to create a trust. The purpose of keeping the fund safe pursuant to the suggestion of the court

to which the receivers were accountable is a sufficient purpose for the establishment and maintenance of a trust.

The next question is whether there was a fund from which the trust could be established and if so was sufficient action taken to segregate this trust fund.

On January 31, 1933, the day of the transfer, the cash assets of the bank were sufficient to make possible the creation of the trust if both actual cash and "due from banks" are taken into account. This is so even though over $38,000 of the money be considered already appropriated to the trust department before the transfer in question took place. That "due from banks" should be considered the equivalent of actual cash for this purpose seems clear on principle and authority. In *People v. Iuka State Bank*, 229 Ill. App. 4, 14, *People v. Auburn State Bank*, 215 Ill. App. 133, 139, and *People v. Citizens State Bank of Melrose Park*, 274 Ill. App. 444, it was so decided.

There being sufficient cash assets to create the trust it remains whether it is necessary in such a case to go through the formality of withdrawing the money deposited in the general account and redepositing it in the trust department. The law does not require useless things to be done. The right to withdraw the general deposit being granted it would seem useless to require it, where it is the intention of the parties to permit the money to remain with the same institution. This principle is clearly set forth in *In re National Bank of Ottawa*, 273 Ill. App. 545, 554, 555.

The court is therefore of the opinion that a trust in favor of the bridge receivers was created on January 31, 1933.

This is not conclusive of the question of the right to a preference which depends upon the existence of a trust fund which the *cestui que trust* can trace.

The evidence hereinbefore recited shows that the funds of the trust department of the bank and the

commercial department of the bank were mingled in a common till. The older cases such as *School Trustees v. Kerwin,* 25 Ill. 73; *Wetherell v. O'Brien,* 140 Ill. 146, and *Bayor v. American Trust & Savings Bank,* 157 Ill. 62, 68, to the effect that where trust funds are mixed with other funds of the trustee so that the whole becomes an indistinguishable mass, the trust fund cannot be traced, have been modified by the later decisions of the Supreme Court. In *People v. Peoples State Bank of Maywood,* 354 Ill. 519, 534, 535, the court stated that the former rule with respect to tracing of trust funds had been changed. It held that in such case the *cestui que trust* was entitled to a lien on the cash assets in the hands of the bank receiver. The law indulges a presumption that the trustee would spend his own funds before dissipating trust funds. However, if at any time the cash balance in the hands of the trustee becomes less than the amount of money held in trust it becomes clear that the trustee has dissipated trust money. Therefore, the fund to which the trust may be traced is confined to the lowest cash balance in the hands of the trustee between the time when the funds are mingled (which in this case is the same as the date of the establishment of the trust) and the time when the receiver takes possession of the bank.

It has been previously noted that the cash balance in the hands of the trustee was considerably greater at the time when the auditor of the State of Illinois appointed a conservator for the bank than it was at the time when the receiver appointed by the auditor took possession of the bank. The statute authorizes the auditor to appoint a receiver and to take possession of the bank for the purpose of reorganization or liquidation. No authority is given to appoint a conservator. It is impossible to ascertain from this record the nature of the proceeding by which the auditor appointed a conservator. If the conservator was in effect

a receiver, and if upon this appointment the real control of the bank was that of the auditor, and if the receiver was simply a successor to the conservator acting in the same capacity as appointee of the auditor, the receiver should not be permitted to say that he is responsible only for the cash assets which came into his hands on August 15, 1933. If on the other hand the management of the institution under the conservatorship was essentially a continuation of the banking business under the bank management, and the conservator was simply a watchman for the auditor, the right to trace the funds of the trust should be confined to the lowest cash balance between January 31, 1933 and August 15, 1933.

If the bank receiver is accountable for cash received by the conservator a further question arises with respect to the cash assets as of that time. We have said that the item "due from banks" is to be treated as a cash asset. Is "due from Reconstruction Finance Corporation" to be treated in the same manner? If it was money already loaned which simply awaited the call of the Cairo bank it might be so treated. If it was something less than that it could not be considered a cash asset.

Appellee contends that the transaction was ultra vires of the bank in that it was an attempt to prefer one depositor over another by giving security for the deposit. The cases of *City of Marion v. Sneeden,* 291 U. S. 262; *Texas & Pac. Ry. Co. v. Pottorff,* 291 U. S. 245; *People ex rel. Nelson v. Citizens State Bank,* 275 Ill. App. 159; *People ex rel. Nelson v. Wiersema State Bank,* 276 Ill. App. 21; *Knass v. Madison & Kedzie State Bank,* 354 Ill. 554; and *Hoffman v. Sears Community State Bank,* 356 Ill. 598, are cited. The first four cases cited are cases in which a bank while retaining a general deposit account in favor of a depositor created a trust to secure that general deposit.

The result of such a transaction is to segregate assets of the bank to secure credits to the depositor irrespective of the manner in which the credits arise, and to give a wholly deceptive appearance to the books of the bank. The result would be to permit the bank to have secret trusts which would not appear on the bank's books. This is not true of trust accounts fairly kept in the books of the trust department. The action of the bank in this case was not an attempt to give security for a general deposit. The general deposit account was closed and a trust account was established. The other two cases cited by appellee on this point are cases in which the court held agreements to repurchase bonds sold by the bank to be ultra vires of the bank.

Appellee's contention that the transaction violated the Chattel Mortgage Act is also based upon the theory that the bank was giving security for a debt, that is for the general deposit. As we have seen the debt was paid and a trust obligation incurred.

A more serious question is presented by appellee's assertion that the transaction is void because the president of the bank was, at the time he authorized the transfer, interested in the Cairo Bridge and Terminal Company. Such transactions are scrutinized very closely by the courts and are usually declared void whether or not there is any suggestion of bad faith in the action of the interested officer. *Higgins v. Lansingh,* 154 Ill. 301, 364. The situation here is unusual and we think the general rule should not apply. If the bridge receivers acting on the suggestion of the court to which they were accountable had demanded of the cashier the full amount of their deposit, could the cashier have refused to pay? It is clear that he could not. So also if the bridge receivers had demanded of the bank that it furnish a depository bond or pay the account, on being unable to furnish the bond the bank could not have refused to pay the account.

The evidence shows that the president was faced with this alternative. He thereupon suggested that the institution be permitted to retain the money, even though it could not be retained in the commercial department. This transaction cannot be considered similar to those in which an officer of a bank purchases property of the bank to secure a debt the bank owes him, or to those cases where negotiations for a contract are made between parties free to deal or not as they choose and in which one or the other of two institutions in which the officer is interested must get the worst of the bargain.

There is no evidence to show that either at the time of the first demand of the bridge receivers in November or December, 1932, or at the time of the actual transfer of the account that the president or the bridge receivers knew that the bank would have to close its doors. There is no evidence that the bank was in such condition that payments to depositors could constitute unlawful preferences.

The rights of the bridge receivers in the trust account appear to have been regularly assigned to the Cairo Bridge Company, the appellant.

The trust created was an obligation of the trust department of the bank. The trust department had deposited certain securities with the auditor of the State of Illinois. Appellants, along with other trust creditors, are entitled to payment from these securities and from the cash assets to which the trust funds may be traced in accordance with the principles set forth in this opinion. This court is not in a position to make a final determination of the matter for the reason that it is not advised of the rights of other trust claimants, it is not advised of the nature of the conservatorship established after the bank moratorium, and it is not advised of the nature of the credits due the bank from the Reconstruction Finance Corporation at the date of the establishment of the conservatorship.

The decree of the circuit court of Alexander county, Illinois, is reversed and the cause is remanded with directions to proceed in accordance with this opinion.
*Reversed and remanded with directions.*