In the Matter of the Estate of Joseph J. Reiter, Deceased.
Mary Nels, Executrix of the Estate of Catherine Helfgen, Deceased, Appellee, v. Marie A. Reiter and Agnes A. Reiter, Administratrices of the Estate of Joseph J. Reiter, Deceased, Appellants.

Gen. No. 40,292.

Opinion filed January 16, 1939. Rehearing denied January 30, 1939.

JOSEPH A. RICKER, of Chicago, for appellants.

JOSEPH J. SIMON, of Chicago, for appellee; EDWARD McTIERNAN, of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

By petition filed in the probate court, Mary Nels, executrix of the Helfgen estate, prayed that the administratrices of the estate of Joseph J. Reiter, deceased, should be directed to pay to her forthwith her claim in the amount of $3,090, being the proceeds of a mortgage collected by the deceased a few days prior to his death. The administratrices answered admitting that the collection had been made but denying that the claimant was entitled to preference over other creditors. The probate court allowed the claim and directed that it should be paid forthwith.

An appeal was taken to the circuit court where the matter was heard on a stipulation of facts. The circuit court entered an order that the sum of $1,682.23 of the amount claimed being money belonging to the estate of Catherine Helfgen and found to be in the possession of Joseph J. Reiter, deceased, at the date of his death on August 7, 1936, and on deposit in the Live Stock National Bank of Chicago, and which came into the possession of the administratrices after his death, should be paid to the Helfgen estate forthwith; that the sum of $1,324.77, being the balance of said claim less an off-set of $83, represented by the note of Mary Nels, as executrix, given for money advanced for the funeral expenses of her deceased, should be allowed as a preferred claim of the fifth class as provided in paragraph 71 of chapter 3 of the Statutes. From this order the administratrices appealed to this court.

The material facts as stipulated upon the hearing in the circuit court were as follows: Mary Nels, the claimant, is the acting executrix of the estate of Catherine Helfgen, who died testate at Chicago, April 8, 1936. Joseph J. Reiter, against whose estate the claim is made, departed this life on August 7, 1936. For more than 25 years prior to his death he conducted a real estate, mortgage and insurance business at 1543 West 51st street in Chicago, Illinois.

Included in the assets of the estate of Catherine Helfgen was a principal promissory note executed by John J. Wilkins and Annie Wilkins for the sum of $3,000. This note was dated August 2, 1921, and was secured by a trust deed to the Chicago Title & Trust Company on real estate at 5759 South Sacramento avenue, Chicago, Illinois. The note by its terms was due 5 years after date, became payable August 2, 1926, at which time the entire balance of $3,000 was extended for 5 years until August 2, 1931, and on August 2, 1931,

was again extended for 5 years until August 2, 1936, through an extension agreement made by the Marquette State Bank, as agent for the holder of the note, and George Zagorski and Elizabeth Zagorski, his wife, as owners of the premises, interest for the extension period being evidenced by 10 interest notes of $90 each.

On April 10, 1936, the claimant executrix deposited the principal note and the last unpaid interest note of George and Elizabeth Zagorski, the trust deed, extension agreement and mortgage policy, with Joseph J. Reiter for collection. She received this receipt:

"2265                              Chicago, Ill., April 10, 1936. Received of Mary Nels, Executrix of Estate of Catherine Helfgen, deceased, for collection, the Wilkins-Zagorski first mortgage loan papers, in the amount of $3,000 due August 2, 1936.

"Said loan is secured by trust deed as document No. 7225561 on real estate known as 5759 S. Sacramento Ave., Chicago, Cook County, Ill.
$3000.00                          Joseph J. Reiter, Klein."

At the same time Joseph J. Reiter advanced to the claimant $83 to be used for the purchase of a cemetery lot for the claimant's estate and took back a collateral receipt signed by claimant of the same date, which recites that 6 weeks after date for value received the executrix promises to pay to the order of Joseph J. Reiter, the sum of $83, at his office in Chicago, Illinois, with interest at 6 per cent per annum. The receipt also recites that Mary Nels, executrix, has deposited as collateral security for this note the first mortgage above described, and that the executrix (signer of the note), gives to Joseph J. Reiter the authority to sell the same or any part of it on the maturity of the note, etc., being a collateral clause with the usual provisions.

On August 3, 1936, Joseph J. Reiter collected the amount due on this mortgage and deposited it in his

general bank account with the Live Stock National Bank of Chicago. On August 3, 1936, claimant talked with the business manager of the intestate's office, and was informed by him that Joseph J. Reiter was not ready to pay out the money as yet as the check would first have to clear the bank. On August 7, 1936, the time of deceased's death, the $3,090 had not been paid to the claimant and her note for $83 had not been paid. On August 7, 1936, Joseph J. Reiter had a cash balance in the Live Stock National Bank of Chicago of $2,017.06. An itemized statement of his account for the period from August 1 to August 7, 1936, is as follows:

| Date | Checks in Detail | | Date | Deposits |
|---|---|---|---|---|
| Aug. 1, 36 | 1,371.38 | Balance brought forwd | Jul. 31, 36 | 10,787.76 |
| Aug. 3, 36 | 651.51 | | | |
| Aug. 3, 36 | 4,000.00 | | | |
| Aug. 3, 36 | 3,000.00 | | Aug. 3, 36 | 3,484.60 |
| Aug. 4, 36 | 117.25 | 2,500.00 | | |
| Aug. 5, 36 | 500.00 | | Aug. 5, 36 | 334.83 |
| Aug. 7, 36 | 350.00 | 100.00 | | |
| Aug. 10, 36 | 2,017.06 | | | |

The deposit item of $3,484.60 on August 3, 1936, included the $3,090 collected on the mortgage. The inventory filed and approved in the estate of Joseph J. Reiter on November 9, 1936, shows among other assets cash on hand of $99,062.07, which includes the sum of $97,000 life insurance, which was payable to his estate. The estate of Joseph J. Reiter is insolvent and the creditors whose claims have been allowed as of the sixth class aggregating in excess of $200,000, will receive not to exceed 50 per cent of the amount allowed. The questions for decision are whether the circuit court erred in directing a forthwith payment to the claimant in the sum of $1,682.23, and whether it erred in allowing the further sum of $1,324.77 as a preferred claim of the fifth class.

Section 70 of the Administration Act (Ill. Rev. Stat. 1937, ch. 3, p. 78 [Jones Ill. Stats. Ann. 110.071]) provides:

"All demands against the estate of any testator or intestate shall be divided into classes in manner following, to-wit:

"First. Funeral expenses and necessary cost of administration.

"Second. The widow's award, if there be a widow; or children, if there are children and no widow.

"Third. Expenses attending last illness, including physician's bill, and demands due common laborers or household servants of deceased for labor.

"Fourth. Debts due the common school fund or township.

"Fifth. Where the deceased has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for.

"Sixth. All other debts and demands of whatever kind without regard to quality or dignity, which shall be exhibited to the court within one year from granting of letters as aforesaid. . . ."

The briefs by citation and argument present the questions arising on the record as requiring an interpretation of sections 5 and 6. In so far as the item for $1,682.23 is concerned, it is apparent the circuit court did not proceed under either section 5 or 6 of the statute. The order is not for the payment of this item in course of administration but a direction for the payment thereof "forthwith." It is apparent, therefore, that the obligation is recognized as one to be satisfied irrespective of funeral expenses, costs of administration, widow's or children's award, expenses of last illness and debts due the common school fund or township. It is apparent the order could have been made only on the theory that this item was found in the hands

of the administratrices of Reiter's estate but that it did not belong to their estate but on the contrary was the property of the estate of Catherine Helfgen. Manifestly, the order would not be justifiable if (as respondents contend) the relationship between the claimant and Joseph J. Reiter by means of the transaction set up in the stipulation was simply that of creditor and debtor nor if it constituted a trust within the meaning of section 5 of the Administration Act. Under the first hypothesis the claim would be allowed under classification No. 6 and under the second as a preferred claim, but in either case it would be paid not *"forthwith"* but in due course of administration. The question requires careful consideration of the facts to the end that the relationship which existed between Joseph J. Reiter at the time of his death and the claimant may be determined. The receipt shows that when the mortgage papers were delivered to Joseph J. Reiter, he was constituted an agent to collect and remit the proceeds to the claimant. It has been well said that the germ of agency is hard to distinguish from the germ of trust. Bogert, Trusts and Trustees, Vol. I, sec. 15, p. 45.

The property in the mortgage, at the time it was delivered to Reiter, was in the estate of which the claimant was the executrix. She did not convey it to Reiter and she had no power to convey it to him. The claimant stood in a fiduciary relationship to the estate of which she was the executrix, of which relationship the stipulation shows Reiter had knowledge. Joseph J. Reiter by that transaction became no more than the agent of claimant. She was his principal. He was given possession of the securities but no title was conveyed to him. He was authorized to collect for his principal. He collected it. The money (when collected) did not belong to him. It was the property of the estate of his principal. His sole duty was to turn these proceeds

over to her. He did not do this, but on the contrary put the money in his own bank account. He used a part of it for his own purposes. This was unauthorized and amounted to a conversion. The estate of the claimant could not as between claimant and Joseph J. Reiter, or his estate, be deprived thus of her property without her consent. She could follow the property of which she was a fiduciary so long as she could identify it. As our Supreme Court said in *Svanoe v. Jurgens,* 144 Ill. 507, at 515, 33 N. E. 955: "An agent, who receives the money of his principal, holds the same in trust, and must be held strictly to the liability of a trustee as between himself and the man for whom he acts."

The claimant could elect to hold him to that liability or at her election she could follow and take the property which belonged to her estate so long as she could identify it. The facts of Reiter's death would not change the right of property vested in the estate of which she was the executrix. A mere agent ordinarily does not take title to the property of his principal. He might, of course, by special contract take title, but in the absence of such contract he does not, as Prof. Bogert points out in the above citation. When the form of property was changed from that of a mortgage security to cash, the cash in the hands of Reiter became at once the property of the estate of Catherine Helfgen. *Silsbury v. McCoon,* 3 N. Y. 379, 53 Am. Dec. 307; Bogert, Trusts and Trustees, Vol. IV, ch. 44, sec. 921, p. 2653. This is the theory upon which the decision in *People ex rel. Nelson v. Bates,* 351 Ill. 439, 442, 443, as well as *People ex rel. Barrett v. Cairo-Alexander County Bank,* 282 Ill. App. 343, 353, are based, as appears from the later decisions of *People ex rel. Nelson v. People's State Bank of Maywood,* 354 Ill. 519; *People ex rel. Nelson v. Stony Island State Sav. Bank,* 358 Ill. 118; *Baïar v. O'Connell,* 365 Ill. 208. The opinion

in the last named case points out that the question had arisen and been considered in connection with two kinds of bank deposits, special and general. These later cases follow the law as announced in *People ex rel. Russell v. Farmer's State & Sav. Bank,* 338 Ill. 134. The opinion cites *Blakey v. Brinson,* 286 U. S. 254, 76 L. Ed. 1089, 52 Sup. Ct. 516, 82 A. L. R. 1288; *Norling & Bloom Co. v. Exchange Trust Co.,* 288 Mass. 444, 193 N. E. 1; *Fulton v. Escanaba Paper Co.; Fulton v. University of Dayton,* 129 Ohio St. 90, 193 N. E. 758, as following the same rule, which it states to be: ''That when a preference of this particular sort is claimed it must be founded upon a claim of title to the funds and not based upon the relationship of debtor and creditor.''

The above cases did not involve claims against estates in the probate court. However, we see no reason why the rule of law as there applied should not also be applied in the case of an estate where its executor or administrator has in his possession property which can be identified and the title to which is found to be in another. In *Adams Express Co. v. Oglesby,* 215 Ill. App. 94, 97, this court considered questions with reference to claims of what was then known as the sixth but now as the fifth class under the Administration Act. In that case the deceased, who conducted a drug store, had been appointed by the express company its agent to sell money orders for which he was to receive compensation and to remit the proceeds to his principal. After his death it was found that he had sold and failed to remit to the express company money orders aggregating $2,510.59, and that his estate was insolvent. The money unlawfully retained had been commingled with his own funds. The opinion of this court pointed out that if the claim were allowed only as of the then sixth class, the claimant might receive nothing in case the entire estate was required to pay claims of

other classes. In the opinion in that case this court said: ''There is no reason why the Probate Court may not order a fund kept separate and distinct turned over to the claimant absolutely, for in such circumstances the fund was not a part of the estate at all, but the property of the claimant and should be delivered to him upon order of the court *and not allowed as of any class.* If it should be allowed only as of the sixth class and the estate insolvent, the claimant might receive nothing in case all the estate was required to pay claims of the first, second, third, fourth and fifth classes.''

*In re Estate of Melone,* 247 Ill. App. 226, this court had before it a case in which money in the hands of the deceased was converted and embezzled by him, and concerning which the court said:

'' 'Money of the principal in the hands of the agent is still the money of the principal, and the agent has no right to use it or pay it out for his own private purposes. While he has this money, he is not, technically, the creditor of his principal, but simply his trustee. (Mechem on Agency, sec. 780.) It is, in such case, therefore, always the legal presumption that the money in the hands of the agent is the identical money that he received, and he will not be heard to allege his embezzlement or breach of trust to escape a liability arising from that presumption. Mechem on Agency, sec. 785; Story on Agency, secs. 229, 230; *Trustees v. McCormick,* 41 Ill. 323; *Cotton v. Holliday,* 59 id. 176.' ''

New York courts reached the same conclusion in *In re Gaul's Estate,* 160 N. Y. Misc. 123, 289 N. Y. S. 644. For the reasons indicated we think irrespective of the sections of the administration statute providing for the classification of claims against the estate, the circuit court was justified under the facts here in directing that the item of $1,682.23 be turned over to the executrix of the estate of Catherine Helfgen forthwith. The probate court had jurisdiction under sections 81 and

82 of the Administration Act as amended. Ill. Rev. Stat. 1937, ch. 3, pp. 80 and 81 [Jones Ill. Stats. Ann. 110.082, 110.083]; *Johnson v. Nelson,* 341 Ill. 119.

As to the second item, the problem before the court was different. This portion of the fund collected from the mortgage deposited with Reiter in his lifetime had been dissipated so that it was impossible to trace or identify it. It could not, therefore, be turned over in specie and the question for decision is as to whether under paragraph 5 of section 70 of the Administration Act this could be said to be money received by the deceased "in trust for any purpose." It is not disputed that upon the conversion of this money by the intestate the law would impress a trust upon it for the benefit of the owner, and the language of paragraph 5 would at first blush, seem broad enough to permit a preference by reason of that trust. The courts have, however, given a much narrower construction to this section. As the Supreme Court said in *Wilson v. Kirby,* 88 Ill. 566: "It is certain that the legislature, by the phrase 'in trust for any purpose,' intended to extend the class of preferred claims, but how far, admits of question."

In *Merchants' Loan & Trust Co. v. Hulette,* 187 Ill. App. 161 (Abst.), this court said:

"It has been repeatedly held by the courts of this state that the word 'trust' as used in the 6th clause (now 5th clause) applies only to technical or express trusts, and that it has no application to trusts which the law implies as growing out of contracts. *Felsenthal v. Kline,* 214 Ill. 121; *Svanoe v. Jurgens,* 144 Ill. 507; *Ford v. First National Bank,* 100 Ill. App. 70; *Shipherd v. Furness,* 153 Ill. 590; *Wilson v. Kirby,* 88 Ill. 536; *Jarrett v. Johnson,* 216 Ill. 212. We are clearly of the opinion that the facts in this case do not establish an express or technical trust. The trial court therefore properly placed the claim in the seventh class." (now sixth class.)

In *Felsenthal v. Kline,* 214 Ill. 121, the Supreme Court said: "We have uniformly held that the word 'trust,' as used in the sixth (now fifth) clause, is not to be taken in its general sense as embracing every case in which a confidence has been reposed, but must be understood in the restrictive sense, and applies only to technical trusts, having no application to trusts which the law implies as growing out of contracts. (*Wilson v. Kirby,* 88 Ill. 566; *Svanoe v. Jurgens,* 144 id. 507; *Shipherd v. Furness,* 153 id. 590.) There is no construction of the facts in this case which can bring it within the definition of a trust as defined by these decisions, and the courts below have each properly placed it in the seventh (now sixth) class."

The cases might be multiplied but it will be sufficient to say that the courts have uniformly construed this phrase of paragraph 5 of the Administration Act as being limited to express as distinguished from constructive trusts created by law. It follows that in so far as the order directed the allowance of $1,324.77 as a preferred claim of the fifth class the court erred, and the claim as to said amount should have been classified as of the sixth class. For the reasons indicated the order of the circuit court in so far as it directs the payment forthwith of the sum of $1,682.23 to the executrix of the estate of Catherine Helfgen by the administratrices of the estate of Joseph J. Reiter, deceased, will be affirmed, but that portion of the judgment directing the payment of the sum of $1,324.77 to the executrix of the estate of Catherine Helfgen, deceased, as a claim of the fifth class will be reversed and the cause remanded with directions to allow the same as a claim of the sixth class.

*Affirmed in part; reversed in part; and remanded with directions.*

McSurely, P. J., and O'Connor, J., concur.